Commonwealth *v.* Accetta.

COMMONWEALTH *vs.* JOSEPH A. ACCETTA, JR.
(and four companion cases[1]).

Hampden. March 5, 1996. - May 13, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, & GREANEY, JJ.

*Homicide. Self-Defense. Evidence,* Self-defense, Testimony before grand
jury, Hearsay, Prior inconsistent statement. *Practice, Criminal,* Verdict.

At a murder trial, the judge correctly excluded as evidence certain prof-
fered grand jury testimony that was neither inconsistent with the
witness's trial testimony nor admissible as probative evidence. [643-645]

At a murder trial in which the evidence warranted a finding of guilty of ei-
ther voluntary or involuntary manslaughter the jury's general verdict of
guilty of manslaughter was properly received and the judge did not err
in declining to submit a verdict slip that listed the two theories as sepa-
rate options. [645-646]

This court directed prospectively that, in a case where the evidence would
warrant a guilty verdict of a crime on more than one theory, a guilty
verdict should state the theory on which guilt was found. [646-647]

INDICTMENTS found and returned in the Superior Court
Department on December 18, 1990.

The cases were tried before *John F. Murphy, Jr., J.*

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Jane Larmon White,* Committee for Public Counsel Ser-
vices, for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the
Commonwealth.

---

[1]Three indictments charging assault by means of a dangerous weapon
and an appeal by the Commonwealth from the denial by a single justice of
this court of its motion to expand the record. Because we decide the
principal appeal in the Commonwealth's favor without consideration of the
record as proposed to be expanded, we shall affirm the judgment entered in
the county court which, in any event, was correct.

The defendant was also convicted on three indictments charging unlaw-
ful discharge of a firearm within 500 feet of a building. These convictions
were placed on file with the defendant's consent and are not a part of this
appeal. See *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975).

Commonwealth *v.* Accetta.

WILKINS, J. The defendant was convicted of manslaughter on an indictment charging him with murder in the first degree. The defendant shot the victim during a struggle in a lounge in West Springfield. He contended that he had acted reasonably in self-defense. He appealed and we transferred the defendant's appeals to this court on our own motion.

The first of the two issues that the defendant argues on appeal concerns the trial judge's exclusion of a portion of the grand jury testimony of a prosecution witness, testimony which the defendant says indicates that the victim had at least partial possession of the gun during the struggle. The second issue arises because the evidence warranted submission to the jury of the possibility of a verdict of either voluntary or involuntary manslaughter, but the verdict slip, over the defendant's objection, simply listed manslaughter as a possible verdict without requiring the jury to designate the type of manslaughter. There was no error, but for the future, in situations like this, not only should a judge instruct the jury that they must be unanimous as to the theory of manslaughter on which they rely, but the verdict slip also should list the alternative manslaughter options.

1. The defendant asserts that the judge erred in denying him the right to present a portion of the grand jury testimony of a prosecution witness, both to impeach the witness and as substantive proof. The defendant contends that this evidence would have greatly strengthened his claim that he acted in self-defense when he shot the victim during the tussle. To understand this argument, we must summarize the trial testimony of Lee Albitz and a portion of his grand jury testimony.

Albitz, a friend of the victim Blaze Brennan and a prosecution witness, testified at trial that he was with Brennan in the West Springfield lounge on the day of the shooting. Albitz was with Brennan at one end of the bar, speaking with another friend, when he had heard a loud explosion. Brennan told the defendant, who was at the other end of the bar, to stop it. The defendant said, "What are you going to do about it?" Albitz saw that the defendant had a gun. The defendant fired a shot into the ceiling or the wall in Brennan's direction. Brennan then walked to the end of the bar where the defendant was. Albitz further testified that as the defendant was drawing his gun, Brennan grabbed the defendant's wrist with

one hand and with his other hand started hitting the defendant. Albitz agreed on direct examination that he had told the grand jury that Brennan had grabbed the defendant's hand, not his wrist. After Brennan had hit the defendant twice, they fell out of Albitz's sight behind the bar. Albitz testified that then four shots were fired. Brennan was fatally wounded.

On cross-examination, defense counsel pursued a statement that Albitz had given to the grand jury. Albitz agreed that he had told the grand jury that Brennan grabbed the defendant's hand and not his wrist. Defense counsel then wanted to introduce the following statement that Albitz volunteered at the conclusion of his grand jury testimony: "I am convinced that [the defendant] used the recoil from the pistol to break the gun free from [the victim] before the last two shots were fired, but that's my opinion." Albitz testified at trial that the opinion he stated to the grand jury was not based on his observation of Brennan and the defendant at the time Brennan was shot. The judge excluded the evidence.

Albitz's excluded grand jury testimony was not inconsistent with anything to which he had testified at trial. Albitz's grand jury statement does not provide "some indication that the fact was different" from something he testified to at trial. See *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982). It was, therefore, not admissible as a prior inconsistent statement to impeach Albitz. Albitz testified at trial that Brennan held the defendant's wrist or arm. Imbedded in Albitz's statement of opinion to the grand jury is the idea that, because of Brennan's conduct, the defendant did not have exclusive control of the gun. Even if this conclusion were the product of Albitz's personal observation (which he said it was not), and even if Albitz's statement were not an opinion (which he said it was), it is not inconsistent with the evidence at trial that Brennan held the defendant's wrist or hand. Both the trial evidence and Albitz's grand jury opinion indicate that the defendant had the gun in his hand, and he could fire it. The judge did not abuse his discretion in excluding Albitz's statement which was not even indirectly contradictory of his trial testimony. See *Commonwealth* v. *McGowan*, 400 Mass. 385, 391 (1987); *Commonwealth* v. *Hesketh, supra.*

Albitz's excluded grand jury testimony also was not admissible as probative evidence under the principles expressed in

*Commonwealth* v. *Daye*, 393 Mass. 55, 65-75 (1984).[2] It is clear from Albitz's trial testimony that he did not see the shots fired and that the opinion he stated to the grand jury was his speculation as to why the defendant first fired the gun during the tussle. Such a speculative opinion concerning what the defendant thought when he first fired the gun during the tussle was not admissible as probative evidence. Moreover, the *Daye* hearsay exception concerns only prior inconsistent statements, and, as we have said, Albitz's grand jury testimony provides no indication that any fact was different from what he testified to at trial. *Commonwealth* v. *Daye*, *supra* at 73 n.16.

2. The defendant contends that the judge erred in giving the jury a verdict slip that listed manslaughter generally as a possible verdict, instead of listing voluntary manslaughter and involuntary manslaughter as separate options. The judge instructed the jury that their verdict had to be unanimous on each indictment, and the jury affirmed that their manslaughter verdict was unanimous. The defendant did not request the judge to instruct the jury more specifically concerning a manslaughter verdict. The defendant rather objected to the form of the verdict slip after the judge had charged the jury.

The question before us is not whether the evidence would warrant a finding of guilty on either manslaughter theory. Cf. *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988) (insufficiency of evidence to support an alternative theory of guilt requires new trial). It does, as the defendant concedes. Nor does the defendant argue here that the judge's instruction permitted the jury to find the defendant guilty of manslaughter with less than unanimity as to the theory — voluntary or involuntary manslaughter. The issue is whether, when there are alternative factual circumstances that could justify finding a defendant guilty of a crime, the jury must identify in their verdict the theory on which they found the defendant guilty. The defendant argues that the verdict slip should have dif-

---

[2]Defense counsel did not advert to the *Daye* case in arguing for the admission of Albitz's grand jury statement, nor did he ask for an appropriate voir dire to show that the conditions of the *Daye* opinion were met and that the statement was, therefore, admissible. See *Commonwealth* v. *Daye*, *supra* at 74 n.21. We have, nevertheless, treated this issue as if defense counsel offered Albitz's grand jury statement for more than impeachment purposes.

ferentiated between voluntary and involuntary manslaughter to assure that the jury were unanimous in their verdict.

We have never held that a general verdict of guilty of manslaughter may not properly be received, where each theory of manslaughter is presented to the jury. In other words, we have not required that the jury identify the theory on which they arrived at their unanimous manslaughter verdict. We have held, however, that, where there is evidence of separate incidents, each of which could warrant a guilty verdict, the jury must be instructed that specific unanimity is required at least as to one incident. See *Commonwealth* v. *Conefrey*, 420 Mass. 508, 513-514 (1995) (indictment charging indecent assault and battery at divers times). Cf. *Commonwealth* v. *Comtois*, 399 Mass. 668, 676-677 (1987) (any error in failing to charge on unanimity as to any incident did not create substantial risk of miscarriage of justice). Recently, we have directed prospectively that "as a matter of common law, when requested, a judge should give an instruction to the jury that they must agree unanimously on the theory of culpability where the defendant has been charged with murder in the first degree." *Commonwealth* v. *Berry*, 420 Mass. 95, 112 (1995). In addition, we would expect in such a case that any guilty verdict would be accompanied by an indication on the verdict slip of the theory or theories on which the jury based that verdict.

The judge did not err in declining to break out the option of a manslaughter verdict on the verdict slip into two components — voluntary and involuntary. Although the elements of voluntary and involuntary manslaughter are different, each involves an unlawful killing without malice. General verdicts have been common in Massachusetts where the evidence has warranted a conviction of a crime on more than one factual basis. See, e.g., *Commonwealth* v. *Devlin*, 335 Mass. 555, 567-568 (1957) (because "[an] indictment charged only a single offence a general verdict of murder in the first degree was properly returnable without special finding of the particular manner in which it was committed").

We shall, however, do here what we did with respect to murder in the first degree (where alternative theories of guilt are viable) and direct prospectively that, in a case where the evidence would warrant a guilty verdict of manslaughter or

some other crime on more than one theory, a guilty verdict should state the theory on which guilt was found. See *Commonwealth* v. *Plunkett, ante* 634 (1996).

*Judgments affirmed.*