## COMMONWEALTH *vs.* NEICO SANTOS.

Suffolk. February 6, 2003. - October 31, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Duplicative convictions, Instructions to jury. *Jury and Jurors. Evidence,* Common criminal enterprise. *Robbery. Assault by Means of a Dangerous Weapon.*

At a criminal trial where the defendant was charged with armed robbery, a Superior Court judge properly declined to give the jury instructions requiring that they be unanimous as to whether the defendant was liable as a principal or a joint venturer, and that they be unanimous as to whether the "assault" element of armed robbery had been established by proof that he used force on the victim or by proof that he had placed the victim in fear, where the case involved a single criminal episode, and where nothing required the jury to agree as to precisely which threat, or which application of force, caused the victim to part with her money, because alternative methods of establishing a required element were not distinct "theories" of how the crime might have been committed, but were merely similar, equivalent types of conduct, any one (or more) of which sufficed to prove a single element. [284-290]

Evidence of a defendant's intent to steal was sufficient to convict him of armed robbery where the defendant proceeded with the commission of the crime fully intending to take more than the $500 allegedly "owed" him [290-291]; likewise, evidence of his liability as a principal was sufficient, where force and threats, including menacing conduct with a weapon, were exerted throughout the encounter to facilitate the taking of money from the victim, and therefore the precise sequence of events was not the issue [291-292].

A defendant's conviction of assault by means of a dangerous weapon was duplicative of his conviction of armed robbery, where, as presented and argued, the crimes were so closely linked to a single event as to constitute a single crime; therefore, this court vacated the conviction of assault by means of a dangerous weapon. [292-294]

This court concluded that the judge's decision not to give a missing witness instruction at a criminal trial charging armed robbery, and his evidentiary rulings at that trial, were not erroneous; further, this court concluded that misstatements in a prosecutor's closing argument did not create a substantial likelihood of a miscarriage of justice, where such mischaracterizations would have no effect on the jury's determination that force or threats were used to facilitate the taking of the victim's money as required for the crime charged. [294-295]

INDICTMENTS found and returned in the Superior Court Department on October 29, 1997.

The cases were tried before *Elizabeth B. Donovan*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jon R. Maddox* for the defendant.

*Kajal K. Chattopadhyay*, Assistant District Attorney, for the Commonwealth.

SOSMAN, J. A jury convicted the defendant of armed robbery, assault by means of a dangerous weapon, and threatening to commit a crime.[1] In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed the convictions. *Commonwealth* v. *Santos*, 54 Mass. App. Ct. 1116 (2002). We granted the defendant's application for further appellate review. We now affirm the conviction of armed robbery and vacate the conviction of assault by means of a dangerous weapon.[2]

1. *Facts.* Taking the evidence in the light most favorable to the Commonwealth, the facts are as follows. On September 23, 1997, at approximately 2:30 A.M., Brenda Joyce Cole was asleep in the first-floor apartment that she shared with her son, James Glover, and her niece, Laura Walker, when she was awakened by the sound of Glover talking with someone outside the apartment. She observed Glover enter the apartment and attempt to close the door behind him. Before he could shut the door, the defendant pushed it open and entered the apartment accompanied by three other men. Cole recognized the defendant (whom she had known for years) and one of the other perpetrators. The other two were unknown to her. She saw the four men pursue Glover into his bedroom, heard them arguing with Glover, and went to Glover's room to see what was happening. There, she saw one of the men (not the defendant) pointing a gun at Glover's head. Cole asked them what they were doing, to which one of the perpetrators replied that Glover

---

[1] The defendant was acquitted of other charges alleged in connection with the same incident.

[2] The conviction of threatening to commit a crime was placed on file with the defendant's consent. It is therefore not before us on this appeal. See *Commonwealth* v. *Dahl*, 430 Mass. 813, 814 n.1 (2000).

owed them $200. Another one of the perpetrators, realizing that Cole recognized him, left the apartment at that juncture. Cole told the defendant and the remaining two assailants that she would get the money for them, and left the room intending to telephone police.

One of the assailants saw Cole heading toward the telephone and asked what she was doing. Cole responded that she was "calling the cops." The man approached Cole with a switch-blade knife, telling her to hang up the telephone. She complied, whereupon the man proceeded to cut the telephone cord. Cole then went to her bedroom and retrieved $200 in cash. She gave the money to one of the assailants and asked them all to leave. Ignoring her request, the men went to Cole's bedroom, stating that Glover owed them an additional $300. Cole retrieved an envelope containing $1,300 in cash, and handed over another $300 from that envelope. At that point, the defendant "snatched" the envelope from Cole's hand and handed it to one of his cohorts. The defendant told him "not to take it all," but that instruction was immediately countermanded by one of the other men, who announced that they would "take it all."

The men then ordered Cole to get on her bed, where they tied her hands behind her back with an extension cord. They also brought Glover into Cole's bedroom, tied him up, and placed him on the floor. As she lay on the bed, Cole observed the assailants, including the defendant, taking turns pointing the gun at Glover's head. One of the men asked if anyone else was in the apartment. Cole replied that her niece, Laura Walker, was there. The assailants then went into Walker's room and, pointing a gun at her, forced her to look for money in various places in the apartment. At one point, the men brought Walker to Cole's bedroom, where she saw Glover tied up. While pointing the gun at Glover's head, they said to Walker, "You don't want nothing to happen to your cousin, so find the money." Walker looked around the apartment, but was unable to find any more money. The assailants ultimately brought Walker back to Cole's bedroom and told her to lie on the bed, which she did. Cole looked over toward Glover, and saw one of the assailants still pointing the gun at Glover's head as if he were preparing to pull the trigger. The assailant told Cole to turn her head, and

someone threw something over Cole's face so she could no longer see. She heard the defendant tell Glover "that if he say anything that he'll get him on the street." Another of the assailants announced, "If you call the cops, we'll come back and kill you." The three men then left the apartment. Afterward, it was discovered that additional money from Walker's bedroom, three cameras, three pagers, and some jewelry were also missing, inferably taken by the defendant and his two companions.

2. *Discussion.* a. *Specific unanimity instruction.* The defendant argues that the trial judge committed reversible error by refusing the defendant's requests for specific unanimity instructions with respect to the indictment charging armed robbery. In particular, the defendant requested an instruction requiring that the jury be unanimous as to whether he was liable as a principal or a joint venturer, and that they be unanimous as to whether the "assault" element of armed robbery (see G. L. c. 265, § 17) had been established by proof that he had used force on the victim or by proof that he had placed the victim in fear.[3] The judge declined to give either of the requested specific unanimity instructions, and the defendant objected. The verdict slip for the armed robbery indictment was in the form of a general verdict, and thus did not specify whether the conviction was premised on principal liability or joint venture liability or which form of "assault" had been used to perpetrate the armed robbery.

The judge committed no error. "It is beyond dispute that the jury verdict in a criminal trial . . . must be unanimous." *Commonwealth* v. *Berry*, 420 Mass. 95, 111 (1995), quoting *Commonwealth* v. *Hebert*, 379 Mass. 752, 754 (1980). We have recognized that, in some circumstances, the general instruction that the verdict must be unanimous will not suffice to ensure the requisite unanimity. None of those circumstances is present in this case.

One circumstance calling for a specific unanimity instruction is when, on a single charged offense, the prosecutor presents

---

[3]The defendant raises the same argument with respect to the indictment charging assault by means of a dangerous weapon. We would apply the same analysis and reach the same result, but, because the assault with a dangerous weapon conviction must be vacated for other reasons (discussed below), we will address the specific unanimity argument solely with reference to the armed robbery indictment.

evidence of separate, discrete incidents, any one of which would suffice by itself to make out the crime charged. There, in order to find the defendant guilty of the charged offense, the jury must all agree as to at least one, specific incident. See *Commonwealth* v. *Conefrey*, 420 Mass. 508, 513-514 (1995) (where defendant was charged in single indictment alleging indecent assault and battery on child occurring "on divers dates and times," and child complainant testified to eight distinct episodes of sexual contact, it was error to refuse defendant's request for specific unanimity instruction). Unless the jury all agree that there is proof beyond a reasonable doubt as to one of the specific criminal acts alleged, there is not unanimous agreement that he has committed any crime. Absent a specific unanimity instruction, the jury might mistakenly believe that they could convict the defendant even if they disagreed as to which of the alleged criminal acts he had committed. Thus, if the evidence raises the possibility of this form of juror confusion, and the defendant requests a specific unanimity instruction, the instruction must be given. *Id.* at 514. See *Commonwealth* v. *Comtois*, 399 Mass. 668, 676-677 & n.11 (1987); *Commonwealth* v. *Lemar*, 22 Mass. App. Ct. 170, 172 (1986).

However, if the offense is alleged to have been committed as part of a single episode, there is no such risk of juror confusion and no specific unanimity instruction need be given. The jury must be unanimous that the crime was committed on the occasion alleged, but they need not agree as to every detail concerning how the crime was committed. See *Commonwealth* v. *Cyr*, 433 Mass. 617, 620, 623 (2001) (judge properly declined to give specific unanimity instruction with respect to whether defendant murdered victim by stabbing her or by setting her on fire, despite defendant's claim that his mental state was different at time of each event). "When a single count is charged and where the spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a specific unanimity instruction is not required." *Commonwealth* v. *Thatch*, 39 Mass. App. Ct. 904, 905 (1995) (judge not required to give specific unanimity instruction where rape was alleged to have occurred as part of single episode, despite

victim's testimony as to multiple acts of penetration). The same is true if the prosecution presents evidence of a single criminal scheme or plan carried out consistently over time. In the absence of some distinguishing differences between the successive events, there is no reason to fear that the jury will pick and choose among the alleged incidents and convict the defendant while disagreeing as to which of them were committed. See *Commonwealth* v. *Sanchez*, 423 Mass. 591, 599-600 (1996) (where child victim described repeated identical pattern of sexual assaults, but did not describe particular incidents, specific unanimity instruction not required). See also *Commonwealth* v. *Pimental*, 54 Mass. App. Ct. 325, 327-328 (2002); *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. 343, 350-352 (1999).

The present case involves a single criminal episode, with multiple applications of force and threats of force inflicted on the occupants of the apartment during that episode, culminating in the taking of Cole's money and other property. There was no requirement that the jury agree as to precisely which threat, or which application of force, caused the victim to part with her money, and it would thus be pointless to require them to agree that it was one or more of the threats as opposed to one or more of the applications of force that succeeded in convincing Cole not to resist the taking. The jury need not be unanimous as to that detail, and a specific unanimity instruction is therefore inappropriate.

The defendant seeks to avoid this analysis by pointing to the requirement that a specific unanimity instruction be given and special verdict forms be submitted to the jury whenever the evidence would warrant a guilty verdict on "more than one theory." *Commonwealth* v. *Accetta*, 422 Mass. 642, 647 (1996). He contends that the alternative forms of assault that would comprise the assault element of armed robbery constitute different "theories" of armed robbery, thus necessitating specific unanimity on the "theory" of armed robbery that has been proved. The defendant's argument erroneously elevates the related and overlapping subcategories of a single element into separate "theories."

In *Commonwealth* v. *Berry*, 420 Mass. 95, 112 (1995), we first announced the requirement that the jury reach a unanimous

verdict as to the "theory" of murder proved by the Commonwealth. There, the judge had instructed the jury on all three theories of murder in the first degree and had told the jury that they did *not* have to be unanimous as to which theory or theories had been proved. *Id.* at 110 n.13. The court noted that the due process clause of the Fourteenth Amendment to the United States Constitution did not require juror unanimity as to the theory of murder. *Id.* at 111 n.15, citing *Schad* v. *Arizona*, 501 U.S. 624, 644-645 (1991). However, the court held that "as a matter of common law, when requested, a judge should give an instruction to the jury that they must agree unanimously on the theory of culpability where the defendant has been charged with murder in the first degree." *Id.* at 112.

One year later, in *Commonwealth* v. *Accetta*, *supra*, the court confronted the specific unanimity issue in a manslaughter case, where the case had been submitted to the jury on theories of either voluntary or involuntary manslaughter, with a specific unanimity instruction, but using only a general verdict form that did not specify which theory of manslaughter had been proved. The court noted that the rule of specific unanimity announced in *Commonwealth* v. *Berry*, *supra*, included the expectation "that any guilty verdict would be accompanied by an indication on the verdict slip of the theory or theories on which the jury based that verdict." *Commonwealth* v. *Accetta*, *supra* at 646. Because long-standing precedent upheld general verdict forms, the court held that the use of a general verdict slip in a manslaughter case was not error, *id.*, citing *Commonwealth* v. *Devlin*, 335 Mass. 555, 567-568 (1957), but announced that we would do "what we did with respect to murder in the first degree (where alternate theories of guilt are viable) and direct prospectively that, in a case where the evidence would warrant a guilty verdict of manslaughter or some other crime on more than one theory, a guilty verdict should state the theory on which guilt was found." *Id.* at 646-647.

Thus, while the court has adopted the requirement that the jury be unanimous as to the "theory" of guilt when the Commonwealth has proceeded on "alternate theories," and the companion requirement that that "theory" be identified on the verdict slip, the examples of what the court means by "alternate

theories" are the differing theories of murder in the first degree (deliberate premeditation, extreme atrocity or cruelty, or felony-murder) and the differing theories of manslaughter (voluntary or involuntary). In each case, these are separate, distinct, and essentially unrelated ways in which the same crime can be committed. (Indeed, with respect to manslaughter, voluntary and involuntary manslaughter are mutually exclusive — one cannot kill both intentionally and unintentionally at the same time.)

Other jurisdictions that have grappled with identifying the circumstances requiring juror unanimity on a particular "theory" frame the inquiry in terms of whether the alternative theories presented to the jury are sufficiently distinct, dissimilar, or unrelated. See *People* v. *Marquez*, 692 P.2d 1089, 1100 (Colo. 1984) (en banc) (general verdict permissible where alternative means by which same crime can be committed are not "mutually exclusive"); *State* v. *Famiglietti*, 219 Conn. 605, 619-620 (1991) (unanimity charge not required where there was no "conceptual distinction" between alternative theories presented); *State* v. *Ihle*, 640 N.W.2d 910, 917-919 (Minn. 2002) (specific unanimity not required where alternatives identified by statute defining crime "are not inherently different types of conduct" and "are not so dissimilar" as to result in fundamental unfairness); *State* v. *Frisby*, 174 N.J. 583, 599-600 (2002) (specific unanimity required where prosecution's alternative theories were "based on different acts and entirely different evidence," were "contradictory," "conceptually distinct," and "not even 'marginally related' to each other"); *State* v. *Derango*, 236 Wis. 2d 721, 736, 738 (2000) (presentation of alternate modes of committing same offense does not require specific unanimity instruction unless alternate modes are "conceptually distinct" or "so dissimilar in concept or moral equivalency as to implicate fundamental fairness"). See also *State* v. *St. Pierre*, 693 A.2d 1137, 1139 (Me. 1997) (where crime of unlawful sexual contact required that defendant have "purpose" of either arousing or gratifying his sexual desire or of causing bodily injury or offensive physical contact, jury did not have to be unanimous as to which form of "purpose" had been proved).

The rule laid down in *Commonwealth* v. *Berry*, *supra*, and

*Commonwealth* v. *Accetta*, 422 Mass. 642 (1996), incorporates a similar restriction on its scope, namely, that it applies only in cases where the alternative "theories" presented are substantively distinct or dissimilar. While it may be difficult to construct a precise definition identifying those alternate "theories" that will require specific unanimity, it is clear that the rule does not automatically extend to every alternate method by which a single element may be established. As here, those alternatives are often closely related, and no purpose would be served by requiring the jury to dissect the evidence and agree as to which related, or even overlapping, variant of the same element had been proved. For example, while there are three prongs of "malice," we do not require juror unanimity as to which form of malice has been proved. Or, in rape cases, where there is evidence that the defendant both exerted "force" on the victim and made a "threat of bodily injury," G. L. c. 265, § 22 (*a*), we do not require the jury to be unanimous as to whether it was the "force" or the "threat" that compelled the victim to submit — it would make no sense to acquit a defendant of rape (or to declare a mistrial) merely because the jury could not agree on whether the victim submitted because she had been hit or whether she submitted because the defendant threatened to strangle her. The same is true here. The "assault" element of robbery pertains to the conduct that is used to instill fear and overcome the victim's resistance to the taking. The methods of doing so — actual force or the threat of force — are closely related and, when both are present, will work in combination to subdue the victim. These alternative methods of establishing a required element are not distinct "theories" of how the crime may be committed, but are merely similar, equivalent types of conduct any one (or more) of which will suffice to prove a single element.

Elsewhere we have rejected the notion that the rule of *Berry* and *Accetta* means that the jury must be unanimous in their parsing of the details as to how a crime was committed. See *Commonwealth* v. *Laurore*, 437 Mass. 65, 82 (2002); *Commonwealth* v. *Cyr*, 433 Mass. 617, 623 (2001). In *Commonwealth* v. *Laurore*, *supra*, the defendant argued that the judge should have required the jury to achieve unanimity on the

"theory" of assault underlying the crime of assault with intent to murder, just as the present defendant seeks specific unanimity on the "theory" of assault underlying the crime of armed robbery. There, as here, the alleged "assault" took many forms — the defendant had told the victim that he would kill him, pointed a gun at him and threatened to shoot, fired once hitting the victim in the shoulder, pulled the trigger again producing only "click[ing]" sounds (because the gun was out of ammunition), dropped the gun while struggling with the victim, pulled out another gun, and hit the victim in the head with that gun. *Id.* at 67-68, 70. The court held that a specific unanimity instruction did not need to be given where the evidence described a single event with the alleged assault with intent to murder "supported by alternate factual theories." *Id* at 82. Indeed, as the present case illustrates, if we were to require unanimity down to this level of ostensible "theory," such a requirement would effectively require unanimity as to minute factual details within a single episode, a form of unanimity that we have never required.

We have also rejected the argument that the jury must be unanimous as to whether guilt is based on liability as a principal or as a joint venturer. See *Commonwealth* v. *Ellis*, 432 Mass. 746, 761 (2000); *Commonwealth* v. *Nolan*, 427 Mass. 541, 544 (1998). While we sometimes use the term "theory" of principal liability or "theory" of joint venture, those are not alternate, differing "theories" of the crime that are to be subjected to the specific unanimity and verdict slip requirements of *Berry* and *Accetta*.

b. *Sufficiency of the evidence.* The defendant argues that the evidence was insufficient in numerous respects. First, he argues that the evidence as to his intent to steal was insufficient in that he allegedly was only collecting a debt. See *Commonwealth* v. *Gelpi*, 416 Mass. 729, 730-731 (1994) (honest and reasonable belief that property is defendant's negates intent to steal); *Commonwealth* v. *White*, 5 Mass. App. Ct. 483, 486-488 (1977) (same). This theory, he contends, is evidenced by the references to Glover's "owing" money to the assailants (and the defendant's instruction to the others that they should not take "all" of Cole's money). We disagree. Whatever the status of Glover's alleged "debt," the "debt" claimed by the intruders

was (at most) $500, far less than the $1,300 taken from Cole. As to the defendant's instruction not to take "all" of the money (which the defendant posits as an instruction to take only the amount that was "owing"), that instruction was not followed, and the defendant knew that it was not followed. He continued to participate in restraining Cole and Glover, making Walker search for even more money, holding a gun to Glover's head, and threatening all three of them.[4] He proceeded with the commission of the crime fully intending to take more than the $500 that was allegedly "owed."[5]

The defendant also argues that there was insufficient evidence of his liability as a principal, contending that he himself did not exert force and make any threats (or individually possess a weapon) until *after* the envelope of money had been taken from Cole's hand.[6] By that time, he argues, the "robbery" was already "complete," and his actions were therefore not part of any "robbery." The Commonwealth correctly points out that the defendant's "snatching" the envelope from Cole can itself constitute sufficient "force" to transform the crime into robbery. See *Commonwealth* v. *Jones*, 362 Mass. 83, 88-89 (1972) (snatching of purse is robbery "even though the application of force may, in practice, be so quick as to deny the victim any opportunity to resist"); *Commonwealth* v. *Zangari*, 42 Mass. App. Ct. 931, 932-933 (1997) (same); *Commonwealth* v. *Ra-*

[4]It was presumably during this period of time that the money from Walker's room plus the other items of property were taken.

[5]On similar grounds, we reject the defendant's contention that the judge's failure to instruct the jury on the subject of a reasonable and good faith belief that the money was owed to him (a failure to which no objection was raised) creates a substantial risk of a miscarriage of justice. Where the defendant took well in excess of the amount allegedly "owed," and the defense was that the entire episode had never occurred, the lack of an instruction on this subject would have no impact on the verdict.

[6]The defendant's argument proceeds on the mistaken assumption that the case against him could not be submitted to the jury on a theory of principal liability unless he, as principal, had both exerted force and made threats against the victim. A case may be submitted to the jury on a theory of principal liability if, by any reasonable interpretation of the evidence, the alleged perpetrator has himself committed all elements of the crime. As long as there is evidence that the defendant himself committed some form of assault (along with the other elements of armed robbery), the case may be submitted to the jury on a theory of principal liability. There does not need to be evidence that he individually committed both forms of assault.

*mos*, 6 Mass. App. Ct. 955 (1978) (snatching money from cashier's hand constituted assault with force and violence with intent to rob).

More fundamentally, we reject the defendant's attempt to subdivide this single criminal episode into discrete acts and time frames. Where force or threats are used against the intended robbery victim, the issue is not the precise sequence of events, but whether the use of force or threats (or both) facilitated the taking of the victim's property in some fashion. See *Commonwealth* v. *Sheppard*, 404 Mass. 774, 778 (1989) (evidence that defendant pushed victim after taking merchandise from him sufficed to make crime robbery instead of larceny); *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. 93, 94-95 (1986) (defendant broke into empty restaurant and took money from kitchen; crime became armed robbery when employee arrived and defendant assaulted him with knife); *Commonwealth* v. *Smith*, 21 Mass. App. Ct. 619, 624 (1986), *S.C.*, 400 Mass. 1002 (1987) (victim perceived defendant's knife immediately after wallet taken; "the jury could see the episode as a continuum and reject as a manufactured abstraction" theory that victim's "fear" was induced only "after" taking). Here, after the defendant snatched the envelope from Cole's hand, the robbery continued. The force and threats, including menacing conduct with a weapon, were exerted throughout the encounter to facilitate the taking of money from Cole, and it would be a "manufactured abstraction," *id.*, to suggest that the charged robbery was "complete" as of the instant that Cole let go of the envelope of cash.

c. *Assault by means of dangerous weapon as duplicative of armed robbery.* The defendant argues that his conviction of assault by means of a dangerous weapon should be vacated as duplicative of his conviction of armed robbery. We agree. "[T]o determine whether a defendant may be convicted of two statutory offenses arising from a single incident, 'the long-prevailing test in this Commonwealth is whether each crime requires proof of an additional fact that the other does not.' " *Commonwealth* v. *Wolinski*, 431 Mass. 228, 238 (2000), quoting *Commonwealth* v. *Crocker*, 384 Mass. 353, 357 (1981). Or, even if not literally a lesser included offense, a conviction may be duplicative if

"the crimes are so closely linked to a single event as to constitute a single crime." *Commonwealth* v. *Wolinski, supra* at 238, 239.

Technically, the crime of assault by means of a dangerous weapon is not a lesser included offense of armed robbery. To prove the armed robbery, there must be an assault while "being armed," and that assault must facilitate a taking of money or property from the victim. G. L. c. 265, § 17. To prove an assault by means of a dangerous weapon, the dangerous weapon must actually be used (or at least referred to) during the perpetration of the assault. G. L. c. 265, § 15B (*b*). See *Commonwealth* v. *Delgado*, 367 Mass. 432, 437, 439 (1975); *Commonwealth* v. *Foley*, 17 Mass. App. Ct. 238, 239 (1983). Thus, for the former, an assault must have occurred while the defendant was armed, and the assault must have facilitated a larceny, but the Commonwealth need not prove that the weapon was used during the assault, see *Commonwealth* v. *Chapman*, 345 Mass. 251, 254-255 (1962); for the latter, an assault using or referencing the weapon must be proved, but not larceny.

Here, however, the Commonwealth's theory of "assault" underlying the armed robbery, as expressly argued to the jury, was an assault by means of a dangerous weapon. This was not a case where the perpetrators simply had weapons in their possession at the time they robbed the victim — a weapon was used overtly to commit the various assaults that facilitated the taking of the victim's money and property. The prosecutor's closing argument identified the assaults with the gun as the crux of the armed robbery and then identified those same assaults as the crime of assault by means of a dangerous weapon.[7] The Commonwealth now argues that the jury *could* have found an as-

___

[7] "An armed robbery, when they have the gun to Mr. Glover's head, they had the gun to Laura Walker's head and demanding money. That's the evidence that you need to convict for armed robbery. . . . And when you hear testimony of the gun being pointed at the individuals in the apartment, that's the evidence you're going to need to — when the gun's pointed at Joyce Cole, the evidence you'll need to convict on assault dangerous weapon." As discussed below, there was no evidence of the gun being "pointed at" Cole, only evidence of her seeing it pointed at the others in the apartment, which was simultaneously menacing to Cole. The indictment alleging assault by means of a dangerous weapon specified that the weapon in question was a handgun, and the menacing conduct with that handgun as to Cole was

sault by means of a dangerous weapon that was separate and distinct from the assaults used to perpetrate the robbery.[8] However, they were not instructed that in order to return a verdict of guilty on both charges they needed to find such a separate and distinct assault, and the Commonwealth invited the jury to rely on the evidence of assault by means of a dangerous weapon as the precise predicate assault for the armed robbery. On this record, it appears highly likely that the jury relied on the same assault by means of a dangerous weapon to satisfy the assault element of armed robbery. As presented and argued, these crimes were so closely linked as to render the assault by means of a dangerous weapon conviction duplicative of the conviction of armed robbery. Accordingly, the conviction of assault by means of a dangerous weapon must be vacated.

d. *Other issues.* The defendant's remaining arguments warrant little discussion. We see no abuse of discretion in the judge's denial of the defendant's request for a missing witness instruction as to James Glover. A missing witness instruction should be issued "only in clear cases, and with caution." *Commonwealth* v. *Figueroa*, 413 Mass. 193, 199 (1992), *S.C.*, 422 Mass. 72 (1996), quoting *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986). Beyond other obstacles to producing Glover to testify (he was in Federal custody at the time of trial), the Commonwealth had legitimate tactical reasons for not calling Glover as a witness. See *Commonwealth* v. *Anderson*, 411 Mass. 279, 284-485 (1991).[9] There was also no abuse of discretion in the judge's ruling that certain of the defendant's prior

comprised solely of her observation of the gun being pointed at the two other occupants in the apartment, which were the precise assaults identified as the evidence supporting armed robbery. (The defendant was found not guilty of a companion indictment alleging assault on Cole by means of a dangerous weapon in connection with the knife.)

[8]In making that argument, the Commonwealth adopts the defendant's position that the robbery was "complete" once the defendant took Cole's envelope of money, thus making the subsequent assaults with the gun "separate" from the armed robbery. For the same reasons that we rejected the defendant's dividing of the single, continuing episode into purportedly discrete criminal acts, we reject the Commonwealth's attempt to make the same artificial division.

[9]In a related argument, the defendant contends that the judge erred in denying the defendant a continuance to produce Glover as a witness. Denial of a continuance will not constitute error absent an abuse of discretion, *Com-*

convictions would be admissible for purposes of impeachment in the event the defendant testified. See *Commonwealth* v. *Leftwich*, 430 Mass. 865, 869 (2000).

There was no error in refusing to allow impeachment of Cole with her prior grand jury testimony. A lack of memory at trial is not inconsistent with the past existence of memory, see *Commonwealth* v. *Martin*, 417 Mass. 187, 197 (1994), and Cole's failure to remember something at trial that she once remembered during her grand jury testimony did not make that grand jury testimony an "inconsistent" statement.

Last, we reject the defendant's claim that misstatements in the prosecutor's closing argument — not objected to at the time — created a substantial risk of a miscarriage of justice. While the prosecutor indeed misspoke when he referenced evidence of a gun being "pointed at" Cole or put "to" Cole's head, that mischaracterization of precisely where the gun was pointed or located would have no effect on the jury's determination that force or threats were used to facilitate the taking of Cole's money.[10] The defense theory was that the entire event never occurred, and that theory would not be adversely affected in any way by the prosecutor's misstatement as to which of the occupants of the apartment had had a gun pointed at their heads during the encounter.

3. *Conclusion.* We therefore affirm the conviction of armed robbery and vacate as duplicative the conviction of assault by means of a dangerous weapon.

*So ordered.*

---

*monwealth* v. *Painten*, 429 Mass. 536, 543 (1999), and there was no abuse of that discretion in denying a motion, filed on the morning of trial, seeking an indefinite continuance to try to procure the attendance of a witness who would, in all likelihood, assert the Fifth Amendment to the United States Constitution with respect to the line of questioning counsel ostensibly wished to pursue. See *Commonwealth* v. *Mamay*, 407 Mass. 412, 419-420 (1990), quoting *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276-277 (1973).

[10] Where we have vacated the conviction of assaulting Cole by means of a dangerous weapon, we need not assess whether this repeated misstatement would have had any impact on that verdict.