COMMONWEALTH *vs.* JUNNO OQUENDO.

No. 11-P-1605.

Essex. October 2, 2012. - January 29, 2013.

Present: KANTROWITZ, SIKORA, & RUBIN, JJ.

*Rape. Practice, Criminal,* Sentence.

At the trial of indictments charging the defendant with, inter alia, rape, the evidence was sufficient to prove the element of force [192-193], and the propriety of the defendant's conviction did not rest on the presence in the record of evidence of a threat of bodily injury [193-195].

At a criminal trial, there was no evidence that the judge ignored mitigating factors presented by the defendant's counsel or that the judge improperly sentenced the defendant for conduct other than that for which he was convicted. [195-196]

INDICTMENTS found and returned in the Superior Court Department on August 27, 2008.

The cases were tried before *Richard E. Welch, III*, J.

*Samuel B. Goldberg* for the defendant.

*Catherine Langevin Semel*, Assistant District Attorney, for the Commonwealth.

RUBIN, J. After a jury trial in the Superior Court, the defendant, Junno Oquendo, was found guilty of rape, see G. L. c. 265, § 22(*b*), and two counts of indecent assault and battery on a person fourteen years of age or older, see G. L. c. 265, § 13H. He now appeals.

1. *Background.* Because the defendant challenges the sufficiency of the evidence, this court must view the evidence presented at trial in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). Under that standard, the jury could have found the following facts.

The victim, Jane,[1] went out with a coworker, Vallejo, on the night of March 28, 2008. The women first drove to the Lynn apartment of one Matos, Vallejo's boyfriend. Jane had a couple of cocktails there, and the three drove to a nightclub at approximately 10:30 or 11:00 P.M. At the club, they encountered the defendant, a friend of Matos. Jane had another drink and danced with the defendant for a few songs. She then began feeling ill, so she sat at the bar with Vallejo, Matos, and the defendant. While sitting at the counter, the defendant attempted to flirt with Jane.

Soon, feeling even worse, Jane ran outside and vomited. Vallejo followed her and suggested that they return to Matos's apartment. Dizzy and nauseated, Jane agreed, and the defendant rode next to her in the back seat of Matos's car. The group left the club at approximately midnight. Jane did not remember the car ride, but did recall that she vomited again as she got out of the vehicle and a third time near the front porch outside the apartment.

Once inside the apartment, Jane went directly to the bathroom without removing her coat. She stood bent over the toilet, holding onto the tank and throwing up into the bowl. At first, Vallejo, Matos, and the defendant were at the doorway to the bathroom. At some point, the others left and the defendant entered. He stood behind Jane. Initially he rubbed Jane's back, but then he put his hand under her coat and shirt, and grabbed her breast underneath her bra. She told him "no" and asked what he was doing. He removed his hand but did not leave the room.

The defendant continued to stand behind her. With Jane still leaning over the toilet, the defendant reached to unfasten the button on her pants. She again made clear that the defendant's advances were unwelcome: she asked what he was doing, shook her head, and said "no." As before, he removed his hand but did not leave the room. A short time later, he pulled her jeans and underwear down to her knees. For a third time, Jane said "no."

The defendant inserted his penis into her vagina. Jane said "no" as he did so, and she began to cry from the pain. She felt so sick and dazed that she could not move or turn around. After

---

[1] A pseudonym.

a short time, he stopped, pulled up her pants, and left the bathroom. Jane remained leaning on the toilet.

The defendant then reentered the bathroom, shut the door, and pulled down Jane's jeans once more. Jane was crying and shaking her head. He penetrated her vagina again with his penis. Unable to support herself, Jane fell to the floor and came to rest on her side. The defendant then turned her over onto her back and pulled her pants down to her ankles. He continued to penetrate her, and his movements caused her head to repeatedly hit the wall. Jane screamed "no" and was crying uncontrollably. The defendant asked her several times why she was crying, but she could not answer.

When the defendant stopped, he sat Jane on the toilet. He lifted up her shirt and bra and began kissing her breasts. She told him not to touch her and pushed him away. After she similarly rebuffed a further advance, the defendant laughed and left.

Jane fell asleep on the living room couch and woke up at 3:00 or 4:00 A.M. She then roused Matos and requested a ride home. She told Matos that the defendant had raped her, and she called the police from the car. Officers met her at her home. They took her statement and transported her to the hospital, where she continued to vomit. A urine sample obtained that morning from Jane was tested for alcohol and a number of drugs, including two well-known "date-rape" drugs, but nothing was found.

2. *Discussion.* On appeal, the defendant makes two arguments. First, he contends that the Commonwealth presented insufficient evidence to support the rape conviction and that his motions for a required finding of not guilty thus were improperly denied. Second, he asserts that the trial judge failed to consider mitigating factors at his sentencing and improperly punished him for conduct that could not have formed the basis for the jury's verdict.

a. *Sufficiency of the evidence.* We review the denial of the defendant's motions for a required finding of not guilty to determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Latimore,* 378 Mass. at 677, quoting from *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979). The defendant raises two distinct sufficiency challenges. To convict a defendant of rape, the Commonwealth must prove that the defendant compelled the sexual intercourse "by force or threat of force and against the will of the victim." *Commonwealth* v. *Lopez,* 433 Mass. 722, 726 (2001). The defendant argues first that evidence of force was insufficient.

The defendant's claim is unavailing. The defendant was able to rape Jane only after forcibly pulling down her pants. After she collapsed, he physically turned her over onto her back, without her cooperation, in order to continue raping her. During the assault, the defendant caused Jane's head to repeatedly strike the wall. This evidence amply supports the jury's conclusion that the intercourse was compelled by force. Cf. *Commonwealth* v. *Parreira,* 72 Mass. App. Ct. 308, 314 (2008) (finding sufficient evidence of force where the defendant "nudged" the victim onto the floor, lay on top of her, and removed multiple layers of clothing without the victim's assistance, and where the victim cried and told him "no").

The jury in this case were instructed that they could convict the defendant of rape if the intercourse was accomplished by force or by threat of bodily injury, and they returned a general verdict. The defendant's second argument is that force and threat of bodily injury are two different theories of liability, and that, in the face of a general verdict of guilty, he must receive a new trial because the prosecution presented no evidence of any threat of bodily injury.

To be sure, it is our general rule that when a jury are instructed on two different theories of guilt and return a general verdict, there must be a new trial if the evidence could permit the jury to convict the defendant under only one theory. See *Commonwealth* v. *Plunkett,* 422 Mass. 634, 637-639 (1996) (holding that a new trial was required when the jury were instructed on both premeditated murder and felony-murder but the evidence could support only felony-murder).[2] Force and threat of bodily

---

[2]There is "an exception to this general principle where it is apparent that the jury reached its general verdict necessarily and unavoidably on the theory for which there was evidentiary support." *Plunkett,* 422 Mass. at 638.

injury are not separate theories, however. In the case of rape, evidence of force and of threat of bodily injury are simply different ways of proving that the defendant compelled the victim to submit; that is, each is a way of proving the "element of force." *Commonwealth* v. *Blache*, 450 Mass. 583, 593-594 (2008). See *Commonwealth* v. *Santos*, 440 Mass. 281, 289 (2003) ("[I]t would make no sense to acquit a defendant of rape . . . merely because the jury could not agree on whether the victim submitted because she had been hit or whether she submitted because the defendant threatened to strangle her"). "[I]f we were to require unanimity down to this level of ostensible 'theory,' such a requirement would effectively require unanimity as to minute factual details within a single episode, a form of unanimity that we have never required." *Id.* at 290. The rule articulated in *Plunkett* and related cases does not apply when the two "theories" are not "substantively distinct or dissimilar"; it does not extend to "every alternate method by which a single element may be established." *Id.* at 289. While, as the Supreme Judicial Court has explained, the line may be difficult to draw between cases in which alternate "theories" will require specific unanimity and those in which they will not, in light of that court's discussion of the element of force in *Blache* (and, in dictum, in *Santos*), we think this case falls on the side on which specific unanimity is not required. As such, the propriety of the defendant's conviction does not rest on the presence in the record of evidence of a threat of bodily injury. The evidence that the defendant compelled the victim by force is sufficient to support the conviction.

The defendant correctly notes that in *Commonwealth* v. *Ewing*, 67 Mass. App. Ct. 531, 537 (2006), we did in a rape case describe force and threat of bodily injury as distinct "theories" that required specific unanimity. Nonetheless, we upheld the conviction there, and the defendant does not point to any decision in which a conviction was reversed on the basis of a failure to demonstrate specific unanimity with respect to force or threat of bodily injury. In any event, *Ewing* was decided before the Supreme Judicial Court handed down its opinion in *Blache*, and we believe our conclusion today is consistent with the Supreme Judicial Court's recent teaching in this area, which emphasizes

that what is significant is jury unanimity that a defendant committed the crime, rather than jury unanimity about the precise method by which he did so. See, e.g., *Commonwealth* v. *Zanetti*, 454 Mass. 449, 465 (2009) (finding no need for specific unanimity in joint venture cases as to liability as a principal or a joint venturer, and noting that "[t]he inevitable risk posed by special verdict slips is a greater number of mistrials arising from hung juries, because jurors may all agree that the defendant knowingly participated in the commission of the crime but differ as to whether he did so as a principal or a joint venturer"); *Santos*, 440 Mass. at 289 ("[N]o purpose would be served by requiring the jury to dissect the evidence and agree as to which related, or even overlapping, variant of the same element had been proved. . . . [W]e have rejected the notion that . . . the jury must be unanimous in their parsing of the details as to how a crime was committed").

b. *Sentence.* This court may review a sentence only to determine whether it is illegal or unconstitutional. *Commonwealth* v. *Grimshaw*, 412 Mass. 505, 513 (1992). The defendant urges that the sentence was improper because the trial judge "ignored" the mitigating factors defendant's counsel presented at the sentencing and improperly punished the defendant for conduct other than that for which he was convicted.

The defendant's attorney introduced several mitigating factors at the sentencing hearing: that the defendant was an involved parent; that he was gainfully employed; that he willingly gave a statement to police; and that he was pleasant and considerate to his own attorney. There is no evidence that these factors were ignored. In fact, to the contrary, there is evidence they were taken into account. Before announcing the sentence, the judge commented to the defendant, "I am sure that [defense counsel] is correct that you're a polite, pleasant person most of the time." Furthermore, the judge handed down a lesser sentence than the prosecutor requested. A defendant may at sentencing introduce mitigating factors, but ultimately "the judge must decide what weight to give to the proffered information." *Commonwealth* v. *Jones*, 71 Mass. App. Ct. 568, 574 (2008). The defendant has not demonstrated that the judge abused his discretion or committed other error of law by failing to take account of what mitigation was placed before him.

Nor did the judge improperly sentence the defendant on the basis of uncharged conduct. A judge may not sentence a defendant for conduct that constitutes a crime of which he was acquitted or for which he was never charged. See, e.g., *Commonwealth v. McCravy*, 430 Mass. 758, 766-768 (2000) (remanding for resentencing where the defendant was acquitted of vehicular homicide but the judge, in sentencing the defendant for driving recklessly or negligently so as to endanger the safety of the public, nevertheless held the defendant "responsible for the fatality"). The defendant asserts that the judge sentenced him on the basis that Jane was unable to consent. That was not the theory of the Commonwealth's case, and it was not a theory upon which the jury were instructed.

The record, however, belies the defendant's claim. At sentencing the judge, among other things, referred to the defendant's decision to rape a woman who was "almost incapacitated." The judge did not state that Jane was unable to consent. The evidence clearly showed that she was quite ill and consequently had a diminished physical capacity to fend off the defendant's attack. There was no error by the judge in considering this aspect of the crime in his evaluation of all the evidence and his determination at sentencing of the appropriate punishment. See, e.g., *Commonwealth v. Morse*, 402 Mass. 735, 740 (1988).

*Judgments affirmed.*