## Commonwealth vs. Robert S. Dingle.

No. 07-P-420.

Plymouth. September 4, 2008. - December 4, 2008.

Present: McHugh, Mills, & Wolohojian, JJ.

*Obscenity,* Child pornography. *Practice, Criminal,* Duplicative charges, Double jeopardy, Assistance of counsel. *Constitutional Law,* Double jeopardy. *Evidence,* Prior misconduct.

Indictments charging the defendant with violating G. L. c. 272, § 29B, by either distributing or possessing with the intent to distribute visual material that either depicted child nudity or children engaged in sexual conduct were not ambiguous, duplicative, or in violation of art. 12 of the Massachusetts Declaration of Rights or the United States Constitution, where, rather than creating two separate crimes, the statute embodied a single crime that could be accomplished by disseminating either type of image. [277-282]

No double jeopardy violation arose at the trial of three indictments charging the defendant with possession of child pornography with the intent to distribute it in violation of G. L. c. 272, § 29B, each involving a different group of materials that violated the statute, where the Commonwealth was free to group, for charging purposes, the images according to the media upon which they were stored, rather than deeming the defendant's collection of pornography in various formats a single unit of prosecution. [282-283]

At the trial of indictments charging the defendant with child pornography offenses, the admission of prior bad acts evidence (consisting of the defendant's conviction record of felony child abuse, as well as police reports and a docket sheet showing a count of indecent exposure), although error, was not prejudicial, where the evidence was cumulative of the defendant's own admissions that he had previously had sex with a little boy and that he had touched several boys. [283-285]

At the trial of indictments charging the defendant with child pornography offenses, defendant's counsel was not ineffective for failing to file a motion to suppress the defendant's statements to police on the ground that his intelligence was insufficient to permit him to understand the Miranda warnings, where such motion was likely futile in light of significant evidence suggesting that the defendant's statements were voluntary. [285-286]

INDICTMENTS found and returned in the Superior Court Department on November 13, 2001.

The cases were heard by *Suzanne DelVecchio*, J.

*Michael J. Hickson* for the defendant.

*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

WOLOHOJIAN, J. A judge found the defendant guilty of three counts of possession with intent to distribute child pornography and two counts of distributing child pornography, all in violation of G. L. c. 272, § 29B. On appeal, the defendant argues that (1) the indictments were unconstitutionally duplicative; (2) the three possession convictions violated principles of double jeopardy; (3) evidence of prior bad acts was incorrectly admitted; (4) trial counsel provided ineffective assistance; and (5) the errors cumulatively resulted in undue prejudice requiring reversal. We affirm.

*Background.* The evidence at trial established the following facts. In July, 2001, Carl Ekholm was living in a rooming house in Hull, when his next-door neighbor, Wes, stopped by Ekholm's house and introduced him to the defendant. Wes told Ekholm, who had experience installing and operating computers, that the defendant was having some problems with his computer. Ekholm and the defendant talked, and eventually, Ekholm showed the defendant some adult pornography stored on his (Ekholm's) computer. In turn, the defendant retrieved several pictures from his backpack and showed them to Ekholm. The pictures, which appeared to be computer printouts, depicted "a full grown male having sex with a[n] underage male." Ekholm found them disturbing and told the defendant to "put [them] away and get the hell out of my house."

Several hours later Wes, who appeared to have been drinking, returned and asked Ekholm if he would give the defendant a ride home. Ekholm agreed because he wanted to know where the defendant lived in order to report him to the police. After dropping off the defendant at his apartment in Hull, Ekholm saw a police cruiser. He told the officer about the child pornography he had seen. Apparently, the officer took no action in response to Ekholm's report.

A week or so later, on July 14, 2001, Detective Francis Yannizzi, Jr., went into the convenience store where Ekholm worked. Ekholm took the opportunity to inquire whether anything had

been done about his previous report. As a result of the conversation, Ekholm agreed to try to purchase pornographic pictures in "controlled buys" from the defendant, which he then did on two separate occasions.[1] As a pretext, and in light of the aversion Ekholm had shown to the images previously, he told the defendant that he was seeking to purchase the materials for a friend. The defendant asked if Ekholm's friend knew of "any children who would be quiet or does he have any children who are quiet?" The defendant also admitted having had sex with a little boy and having touched several little boys. Ekholm described the materials he received from the defendant, which consisted of multiple pictures and two videotapes, all depicting "young children," as "graphic."

On July 27, 2001, pursuant to a warrant, the police searched the defendant's apartment while he was present. The defendant was given Miranda warnings, which he said he understood. Detective Yannizzi informed him that they were there to remove child pornography. Although the defendant denied having any pornographic materials, he admitted that he was the only person who lived in the apartment.[2] While the police conducted their search, the defendant stated that a lawyer had once advised him

---

[1]The two indictments for distribution of child pornography relate to these two purchases, which took place on July 24, 2001, and July 26, 2001. On the first occasion, the defendant showed Ekholm around his one-bedroom apartment, including the living room where he kept a computer. He retrieved a tan lock box from under his bed, opened it, and began to leaf through the photographs in it. He took out a couple of samples. He then retrieved a second green lock box from a shelf in his bedroom and repeated the process, again removing a couple of photographs. Ekholm asked the defendant if he had any videotapes, and he replied that he did. The defendant seemed excited about the possibility of selling the material.

On the second occasion, the defendant went to the bureau in his bedroom and opened a drawer containing about ten to fifteen videotapes. He gave Ekholm two videos in exchange for $120. He also gave Ekholm a few more photographs from one of the lock boxes. On this occasion, the defendant stated that, although he "cleaned" his computer daily, he wanted to know how he could wipe out materials so as to prevent others from seeing them.

On both occasions, Ekholm and his vehicle were searched before he entered the defendant's building. Yannizzi then waited outside until Ekholm emerged from the building and handed him the pornographic materials.

[2]This was confirmed by the fact that all the mail found in the apartment was addressed to the defendant alone.

that "if he ever got caught to say that he couldn't read or write and that he was retarded and that nothing would happen to him."[3] The defendant also said that he was not a threat to children and that he himself was a rape victim.

Among the items confiscated by the police during the search were two lock boxes; 945 photographs, all of which appeared to depict child pornography; a computer; 177 videotapes; and multiple floppy discs. Yannizzi viewed two of the videotapes before he seized them. One tape depicted two boys, about nine and seven years old, running naked on a beach. The other tape showed two males about sixteen and twelve years old, engaged in oral sex. The defendant told Yannizzi that the subjects in the second tape were eighteen years old, and that "somebody must have put [the first tape] in his collection."

Police also recovered receipts showing that the defendant had traded in a computer earlier that day at a Best Buy store. They also found a software program called "Window Washer," which is designed to erase materials from a computer.

The next day, police recovered the defendant's computer from Best Buy where he had traded it in the day before. A forensic examination revealed numerous child pornographic images stored on the hard drive, as well as Web sites that had been accessed containing similar material. Among these materials were photographs of naked boys between the ages of ten and twelve and younger. One file on the hard drive bore the notation "1/1," which is a code used to signal an Internet user's willingness to trade one image for another.

*Discussion.* 1. *Indictments.* The defendant argues that the indictments charge two crimes in the alternative and thus are ambiguous, duplicative, and violative of art. 12 of the Massachusetts Declaration of Rights and the United States Constitution. His argument rests on his premise that, because paragraph (*a*) of G. L. c. 272, § 29B, pertains to materials depicting children in a state of nudity, and paragraph (*b*) pertains to materials depict-

---

[3]The defendant's expert testified that the defendant's intelligence quotient (IQ) fell below all but about one-half of one percent of the population. Further, a witness from a literacy program the defendant had attended testified that the defendant read only at a 1.7 grade level. She also testified that one must read at a fifth grade level to be considered literate.

ing children engaged in sexual conduct, there are two separate crimes that must be charged separately. Although not dispositive of the question and we do not rest our decision on it, we note that the defendant concedes that there was sufficient evidence to convict under either or both of the two paragraphs.

Each indictment charged the defendant with violating G. L. c. 272, § 29B, by either distributing (indictments four and five) or possessing with the intent to distribute (indictments one through three) "visual material that contained a representation or reproduction of a posture or exhibition in a state of nudity *or* an act that depicts, describes, or represents sexual conduct" (emphasis added) of a child under eighteen years of age. The defendant argues that the indictments impermissibly charge two crimes in the alternative by using the disjunctive "or" to join two different types of pornographic material — those showing nudity, and those depicting sexual conduct. Because of this claimed defect, the defendant maintains that he was potentially convicted of a crime for which he was never indicted. See *Commonwealth* v. *Barbosa*, 421 Mass. 547, 549-554 (1995) (indictment alleging single count of distribution of cocaine was defective where grand jury were presented with evidence of two separate transactions, each of which constituted distribution). To support his claim that two separate crimes are involved, the defendant points only to the fact that the statute places each type of pornographic material into a separate paragraph. The relevant portions of G. L. c. 272, § 29B, as amended through St. 1988, c. 226, § 2, follow:

> "(*a*) Whoever, with lascivious intent, disseminates any visual material that contains a representation or reproduction of any posture or exhibition in a state of nudity involving the use of a child who is under eighteen years of age, . . . or has in his possession any such visual material . . . with the intent to disseminate the same, shall be punished. . . .

> "(*b*) Whoever with lascivious intent disseminates any visual material that contains a representation or reproduction of any act that depicts, describes, or represents sexual conduct participated or engaged in by a child who is under eighteen

years of age, . . . or whoever has in his possession any such visual material . . . with the intent to disseminate the same, shall be punished. . . ."

Rather than creating two separate crimes, paragraphs (*a*) and (*b*) of § 29B describe different means of committing the same offense. We reach this conclusion because the language, structure, purpose, and history of the statute indicate that the Legislature intended to create a single crime that could be effectuated by various means, depending on the content of the visual materials at issue. The determination whether a statute creates one or two crimes is a matter of statutory interpretation designed to discern legislative intent. *Commonwealth* v. *Donovan*, 395 Mass. 20, 28 (1985) (issue turns on whether Legislature intended to authorize more than a single conviction). "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Commonwealth* v. *Collett*, 387 Mass. 424, 432 (1982), quoting from *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975).

Here, the two paragraphs are identical with the exception of the fact that paragraph (*a*) pertains to depictions of children in a state of nudity, and paragraph (*b*) pertains to depictions of children engaged in sexual conduct. Each paragraph requires the same mental state (i.e., "lascivious intent"), proscribes the same acts (possession with intent to distribute and distribution), assigns the same sentencing range (imprisonment for "not less than ten nor more than twenty years"), and imposes the same range of monetary fines. The fact that the two paragraphs are identical except as to the content of the images demonstrates that the crime can be committed by two means, i.e., by distributing images of nudity or by distributing images of sexual conduct. The elements of the two paragraphs are the same; the crime can simply be carried out by two different means.

It is true that the two paragraphs are not separated by the word "or"; this alone, however, does not lead to the conclusion

that two crimes were intended for charging purposes. "Where two statutory provisions relate to the same subject matter . . . 'they should be construed together so as to constitute an harmonious whole consistent with the legislative purpose.' " *Dowling* v. *Registrar of Motor Vehicles*, 425 Mass. 523, 525 (1997), quoting from *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). Moreover, each of the remaining paragraphs of the statute provides definitions or exclusions that apply to paragraphs (*a*) and (*b*) equally, and to the same effect.[4] This, too, shows that paragraphs (*a*) and (*b*) were to be read as a single crime.

Our interpretation of the language and structure of § 29B is buttressed by its legislative history. When first enacted in 1977, both types of visual images (i.e., those depicting nudity as well as those depicting sexual conduct) were included in a single section of the statute:

> "Whoever disseminates any visual material that contains a representation or reproduction of any posture or exhibition in a state of nudity or of any act that depicts, describes, or represents sexual conduct participated or engaged in by a child who is under eighteen years of age. . . ."

[4]The remaining paragraphs of § 29B provide as follows:

"(*c*) For the purposes of this section, the determination whether the child in any visual material prohibited hereunder is under eighteen years of age may be made by the personal testimony of such child, by the testimony of a person who produced, processed, published, printed or manufactured such visual material that the child therein was known to him to be under eighteen years of age, by testimony of a person who observed the visual material, or by expert medical testimony of a person who observed the visual material, or by expert medical testimony as to the age of the child based upon the child's physical appearance, by inspection of the visual material, or by any other method authorized by any general or special law or by any applicable rule of evidence.

"(*d*) In a prosecution under this section, a minor shall be deemed incapable of consenting to any conduct of the defendant for which said defendant is being prosecuted.

"(*e*) Pursuant to this section, proof that dissemination of any visual material that contains a representation or reproduction of sexual conduct or any posture or exhibition in a state of nudity involving the use of a child who is under eighteen years of age was for a bona fide scientific, medical, or educational purpose for a bona fide school, museum, or library may be considered as evidence of a lack of lascivious intent."

G. L. c. 272, § 29A, as inserted by St. 1977, c. 917, § 2. The original version indicates that, at the time of enactment, the Legislature intended to fashion a single crime that could be accomplished by disseminating either type of image.

The statute was subsequently amended in response to the court's decision in *Commonwealth* v. *Oakes*, 401 Mass. 602 (1988), which held that G. L. c. 272, § 29A (which mirrored § 29B)[5] was unconstitutionally overbroad under the First Amendment to the United States Constitution.[6] See St. 1988, c. 226, §§ 1, 2. The 1988 amendment added the requirement of "lascivious intent," divided the section into paragraphs (*a*) and (*b*), and added paragraphs (*c*) through (*e*). See note 4, *supra*, and accompanying text. See also St. 1988, c. 266, § 2.

In *Oakes*, the court ruled that the original version of the statute was unconstitutionally overbroad because, as written, it would prohibit such protected conduct as "a parent who takes a frontal view picture of his or her naked one-year-old running on a beach or romping in a wading pool." *Commonwealth* v. *Oakes*, 401 Mass. at 605. The Legislature intended to solve this problem and avoid the criminalization of constitutionally protected expression by adding to the statute the requirement of "lascivious intent."[7,8] In other words, the history of the statute shows that the Legislature intended the 1988 amendments to address the

---

[5]Section 29A relates to the production of visual material depicting children in a state of nudity or sexual conduct, see St. 1988, c. 266, § 1, while § 29B relates to its dissemination. The structure of § 29A is the same as that of § 29B, with § 29A(*a*) addressing child nudity and § 29A(*b*) addressing children engaging in sexual conduct.

[6]"This amendment is in response to the Supreme Judicial Court's action holding the current child pornography [statute] unconstitutional and will restore to the criminal law of the Commonwealth a prohibition against a particularly insidious form of child sexual exploitation [*sic*] — the creation and dissemination of child pornography." 1988 House Doc. No. 5555.

[7]"Lascivious intent" is defined as "a state of mind in which the sexual gratification or arousal of any person is an objective." G. L. c. 272, § 31, as amended by St. 1988, c. 226, § 3.

[8]At the same time, the Legislature placed the two types of images into different paragraphs, which may have been a way of achieving severability in the event that the addition of the requirement of "lascivious intent" did not alone cure the First Amendment problem. See *Commonwealth* v. *Oakes*, 401 Mass. at 611 n.4 (O'Connor, J., dissenting) (even if statute was overbroad, it was so only to extent that it reached photographing of children in state of nudity, and that provision should be severable so as to save remainder of statute).

statute's overbreadth under the First Amendment, rather than to create two separate crimes.

Contrary to the defendant's contention, the fact that the Commonwealth has, on occasion, charged a defendant under paragraph (*a*) or paragraph (*b*) of § 29B or § 29A, rather than under both paragraphs, does not require us to find that the statute contains two separate crimes.[9] Rather, it shows only that the Commonwealth has the flexibility and ability to charge the specific type of content (nudity or sexual conduct) appropriate to the facts of a particular case. As noted above, the defendant does not dispute that both types of content were depicted in the more than 900 images he possessed.

Finally, the defendant argues that the use of the word "or" in the indictments did not give him sufficient notice of the charges against him because the word "or" was ambiguous. The Legislature has determined that "[d]ifferent means or different intents by or with which a crime may be committed may be alleged in the same count in the alternative." G. L. c. 277, § 31. As explained above, paragraphs (*a*) and (*b*) of G. L. c. 272, § 29B, identify different means of committing the same crime. Furthermore, we do not believe any ambiguity was present here, where the defendant sold and possessed both types of images and the indictments identified the dates upon which the sales were made and the media in which they appeared. See G. L. c. 277, § 34, as amended by St. 1979, c. 344, § 34 ("[a]n indictment shall not . . . be considered defective or insufficient if it is sufficient to enable the defendant to understand the charge and to prepare his defense"). See also *Commonwealth* v. *Murphy*, 415 Mass. 161, 164 (1993) (amendment to indictment changing "and" to "or" was one of form and not prejudicial, as language properly informed defendant of charges against him).

2. *Double jeopardy.* The defendant was charged in three indictments of possessing child pornography with the intent to distribute it. Each indictment charged that a different group of materials violated the statute: the first identified "photographs

[9]See, e.g., *Commonwealth* v. *Bean*, 435 Mass. 708, 708 (2002) (defendant only charged with violating G. L. c. 272, § 29A[*a*]); *Perry* v. *Commonwealth*, 438 Mass. 282, 283 (2002) (defendant separately indicted on charges of G. L. c. 272, § 29A[*a*], and G. L. c. 272, § 29A[*b*]).

and/or computer generated images"; the second identified "material on computer discs"; and the third identified "material on a computer harddrive." The defendant argues that the three indictments were duplicative and violated principles of double jeopardy because his "collection" of pornography should constitute a single unit of prosecution.

A single image can constitute a violation of the statute.[10] As a result, had it chosen to do so, the Commonwealth could have indicted the defendant separately for each image he possessed or distributed. However, it was not required to do so. See *Commonwealth* v. *Smiley*, 431 Mass. 477, 480 (2000) ("[a]lthough the Commonwealth could have sought separate indictments, it was not required to do so"); *Commonwealth* v. *Vega*, 36 Mass. App. Ct. 635, 641 (1994) (multiple sexual attacks on victim during single criminal episode warranted, but did not require, separate indictments). No double jeopardy violation arose from the Commonwealth's choice, for charging purposes, to group the images according to the media upon which they were stored.

3. *Prior bad acts.* The defendant objected to the admission of certain prior bad act evidence, which the Commonwealth introduced to show predisposition in rebuttal to the defense of entrapment.[11] The prior bad act evidence consisted of a record of the defendant's 1976 conviction in Arizona of felony child abuse and a related police report; a 1986 police report that contained allegations that the defendant raped two boys in Lynn; and a 1987 docket sheet from District Court showing one count of indecent exposure that was subsequently dismissed and to which the defendant pleaded not guilty.

"When evidence of inducement has been entered, the burden

---

[10]The statute uses the term "visual material" in the singular. See G. L. c. 272. § 29B. See also G. L. c. 272, § 31, as amended by St. 2002, c. 161, § 2, defining "visual material" as "any motion picture film, picture, photograph, videotape, book, magazine, pamphlet that contains pictures, photographs or similar visual representations or reproductions, or depiction by computer. Undeveloped photographs, pictures, motion picture films, videotapes and similar visual representations or reproductions may be visual materials notwithstanding that processing, development or similar acts may be required to make the contents thereof apparent."

[11]We assume, but do not decide, that the defendant made a sufficient showing of inducement evidence.

rests upon the Commonwealth to prove beyond a reasonable doubt the predisposition of the defendant to commit the crime." *Commonwealth* v. *Miller*, 361 Mass. 644, 652 (1972). "[I]n response to an entrapment defense, the Commonwealth may introduce a defendant's prior criminal acts to show predisposition." *Commonwealth* v. *DeCastro*, 24 Mass. App. Ct. 937, 938 (1987), and cases cited. "Those prior criminal acts, however, must be similar to the crimes for which the defendant is on trial. . . . Only those crimes which are similar will have probative value sufficient to outweigh the strong likelihood of prejudice to the defendant." *Commonwealth* v. *Vargas*, 417 Mass. 792, 795 (1994).[12]

Under other circumstances, the prior bad act evidence may have been sufficiently similar to the charged conduct to have some probative value. See, e.g., *Osborne* v. *Ohio*, 495 U.S. 103, 111-112 & n.7 (1990) (recognizing link between child pornography and pedophilia and noting that pedophiles use such materials to seduce their child victims into sexual activity). The defendant admitted to Ekholm that he had had sex with a little boy and had touched several boys. In the absence of such an admission, the probative value of the prior bad act evidence was outweighed by its prejudice, and some of it was inadmissible for other reasons as well. All of the materials were old, the most recent dating back more than thirteen years. See *Commonwealth* v. *Childs*, 23 Mass. App. Ct. 33, 38 (1986) (the prejudice inherent in any prior conviction "may well be more pronounced where [remote] convictions . . . are brought forward"). Moreover, the police reports contained inadmissible hearsay. See *Kelley* v. *O'Neil*, 1 Mass. App. Ct. 313, 316 (1973) (second level of hearsay appearing in a police officer's report is not admissible). In addition, some of the materials related to uncharged conduct or conduct that was charged but for which the defendant was never convicted. See *Commonwealth* v. *Miller*, 361 Mass. at 652 (evidence that narcotic users and pushers

---

[12]In *Vargas*, the question was whether a prior possession of cocaine, by itself, was sufficiently similar to the crime of trafficking in cocaine, such that it could be used to show the defendant's predisposition to traffic. *Commonwealth* v. *Vargas*, 417 Mass. at 795. The court concluded that "the crime of possession, by itself, is not similar to the crime of distribution for purposes of proving a predisposition to distribute." *Id*. at 796.

mentioned the defendant's name in connection with previous criminal activity is of little probative force).

Although the evidence was erroneously admitted, the error was not prejudicial. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). The evidence was cumulative of the defendant's own admissions to Ekholm that he had previously had sex with a little boy and that he had touched several boys.

4. *Ineffective assistance.* The defendant argues that counsel was ineffective for failing to file a motion to suppress the defendant's statements to police on the ground that his intelligence was insufficient to permit him to understand the Miranda warnings.[13] Absent some showing of a likelihood of success of such motion, counsel will not be deemed ineffective for failing to file it. See *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983) ("It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success"). Here, a motion to suppress was likely futile because the evidence supported a finding that the defendant understood the warnings. That evidence included Detective Yannizzi's testimony that the defendant said that he understood the Miranda warnings when they were given to him, and that the detective never had any trouble understanding or communicating with the defendant. Further, the defendant demonstrated computer literacy and proficiency sufficient to permit him to navigate the Internet, download photographs, use software to erase incriminating materials, communicate by electronic mail, trade materials with other Internet users, purchase and return computer equipment, and display a level of sophistication about the capabilities of his computer equipment, software, and printers.

While a low intelligence quotient is a factor in considering

---

[13]The proper mechanism for advancing an ineffective assistance claim is through a motion for new trial, which provides the opportunity for an evidentiary hearing and findings related to the trial attorney's performance. See *Commonwealth* v. *Zinser*, 446 Mass. 807, 810-811 (2006); *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107-108 (1999). In this case the defendant claims ineffective assistance of counsel for the first time on direct appeal. "[A]n ineffective assistance of counsel challenge made on the trial record alone is the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002).

whether the defendant knowingly and voluntarily waived his Miranda rights or made a voluntary statement to police, it alone is not determinative. See *Commonwealth* v. *Jackson*, 432 Mass. 82, 86-87 (2000). Here, there was nothing further. Indeed, the defendant's ability to offer an exculpatory explanation for the pornography (i.e., he believed the children depicted were over eighteen years old) is significant evidence suggesting that his statements were voluntary. See, e.g., *id.* at 87; *Commonwealth* v. *Beland*, 436 Mass. 273, 281-282 (2002).

5. *Cumulative error.* For the reasons set out above, there is no merit in the defendant's claim of cumulative error warranting reversal.

*Judgments affirmed.*