HANLON, J.
*614 After a jury trial, the defendant was convicted on three indictments, charging aggravated rape of a child under the age of sixteen by means of sexual intercourse, that rape being aggravated by an age difference of more than ten years between them, G. L. c. 265, § 23A (indictment 1); posing and photographing a child under the age of eighteen in a state of nudity, "for the purpose of representation or reproduction in any visual material," G. L. c. 272, § 29A (a ) (indictment 6); and posing and photographing a child under the age of eighteen engaged in sexual conduct "for the purpose of representation or reproduction in any visual material," G. L. c. 272, § 29A (b ) (indictment 7).[1] ,[2]
The defendant appeals, arguing that (1) his separate convictions under *636 G. L. c. 272, § 29A (a ) and (b ) are "duplicative" and amount to a violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution; (2) the trial judge erred in failing to give the jury a specific unanimity instruction; and (3) the prosecutor's closing argument was improper, as the prosecutor vouched for the victim's credibility, misstated the facts and the law, and appealed to the passions of the jurors. We affirm.
Background. The victim, Tatiana,[3] was born in Russia in 1997 and adopted when she was six years old. In the summer of 2013, at the time of the events at issue, Tatiana was fifteen and sixteen *615 years old;[4] she had just graduated from the eighth grade, because she had repeated the third grade while she was learning English.
Tatiana's mother thought that her daughter should do something constructive during the summer before she started high school, and so she agreed with a coworker, the defendant's wife, that Tatiana would work for the Casbohm family as a babysitter that summer. The Casbohms had three young children, aged six, two, and one years old, and Tatiana's mother agreed with Mrs. Casbohm that Tatiana would babysit for the three children three or four days a week. In so doing, Tatiana would be responsible for feeding the children, bathing them, changing diapers, playing with them, taking them to the park, and picking the oldest child up from school. She was not paid for this work. However, the Casbohms did give her a prepaid cellular telephone (cell phone) so that she could reach them in case of an emergency.[5]
One day, before her sixteenth birthday, Tatiana had been cleaning the Casbohms' apartment and was watching television in the Casbohm parents' bedroom. The defendant came home and asked her to sit on the bed with him. He began to rub her back and her shoulders and she asked him why he was doing that; she asked him to stop, but he persisted. Eventually, the defendant began to remove Tatiana's clothing. He got on top of her and removed her underwear; she tried to push him away, but she couldn't because he was stronger than she was. He eventually succeeded in having vaginal intercourse with her. Afterwards, the defendant changed the sheets, told Tatiana to shower, and lit candles to remove the smell.[6] He warned her not to tell anyone what had happened because he "could get in trouble." By the end of the summer, the defendant was having sexual intercourse with Tatiana every day that she babysat for the Casbohm children.
*616 Tatiana testified that the defendant took photographs of her -- "[e]ither during sex or being naked on his bed" -- with his cell phone. She said that he repeatedly *637 photographed her breasts[7] and her vagina and that, on one occasion, he videotaped her while she was taking a shower. The defendant also took measures he said were intended to ensure that Tatiana did not become pregnant, including shooting syringes filled with water into her vagina.
On August 5, 2014, police officers searched the Casbohms' apartment after obtaining a search warrant. In all, the officers seized six cell phones, an Amazon Kindle electronic reader, a laptop computer, and syringes during the search. In particular, they found a cell phone belonging to the defendant in the room identified as "the parents' bedroom." On the defendant's seized cell phone, they found thousands of images and dozens of videos; additional images and videos had been deleted.[8]
Discussion. 1. Double jeopardy. The defendant was convicted of photographing, "with lascivious intent," a child under the age of eighteen "in a state of nudity" in violation of G. L. c. 272, § 29A (a ).[9] He also was convicted of photographing a child under the age of eighteen engaging in "sexual conduct" in violation of G. L. c. 272, § 29A (b ).[10] The defendant now argues that these two convictions were "violative of double jeopardy principles,"
*617 as they involved photographs all of the same child and all seized from one cell phone. That is, he contends that all of the photographs together constituted only one crime, essentially that of "(a ) ... pos[ing] or ... exhibit[ing] [a child] in a state of nudity ... [or (b ) ] ... engag[ing] in ... sexual conduct ...." Compare G. L. c. 272, § 29B, prohibiting the dissemination of any visual material depicting a child in a state of nudity or engaged in sexual conduct, and G. L. c. 272, § 29C, prohibiting the "knowing[ ] purchase[ ] or possess[ion]" of such material. The defendant did not raise this issue at trial. However, "[e]ven if the issue was unpreserved, we will reverse a duplicative conviction. ... Accordingly, we proceed to the merits of the defendant's double jeopardy claim." Commonwealth v. Traylor, 472 Mass. 260, 267, 34 N.E.3d 276 (2015).
In support of his double jeopardy claim, the defendant cites Commonwealth v. Rollins, 470 Mass. 66, 18 N.E.3d 670 (2014), and Commonwealth v. Dingle, 73 Mass. App. Ct. 274, 898 N.E.2d 1 (2008). Neither *638 case assists him as each case addresses a different section of c. 272, and the facts are distinguishable. In Rollins, the court, interpreting G. L. c. 272, § 29C (vii),[11] concluded that the appropriate unit of prosecution for possessing child pornography was not each photograph in a large cache of photographs but, rather, the collection as a whole. "Accordingly, [the court] reject[ed] the Commonwealth's victim-based approach to determining the appropriate unit of prosecution for possession of child pornography, concluding instead that a conduct-based approach is more in keeping with the broad intent of the statute and the tiered punishment framework that it erects. ... Thus, a defendant's possession of a single cache of one hundred offending photographs in the same place at *618 the same time gives rise to a single unit of prosecution pursuant to § 29C. The imposition of multiple punishments for such a singular possession is contrary to the defendant's guaranty against double jeopardy." Rollins, 470 Mass. at 73-74, 18 N.E.3d 670.
In the case before us, the defendant argues that, as in Rollins, the photos of the victim all had one locus -- the defendant's cell phone. He thus reiterates the "single cache" argument accepted in Rollins. Id. The argument fails because here the defendant is charged with production of child pornography, not mere possession.
It is the "legislative prerogative to define crimes and fix punishments." Commonwealth v. Vick, 454 Mass. 418, 434, 910 N.E.2d 339 (2009), quoting Commonwealth v. Crocker, 384 Mass. 353, 359, 424 N.E.2d 524 (1981). "Our jurisprudence defines multiple punishments as those in excess of what a Legislature intended to be the punishment for a particular offense. ... Accordingly, the starting point for our analysis is to ask what unit of prosecution the Legislature intended as the punishable act for violations" of § 29A. Rollins, supra at 70, 18 N.E.3d 670.
In Commonwealth v. Traylor, the court explained that, "[i]n ascertaining the unit of prosecution, our case law distinguishes between two broad categories of statutes. On the one hand, certain criminal statutes are 'focused upon the prevention of violence or physical injury to others.' Commonwealth v. Botev [79 Mass. App. Ct. 281, 286 [945 N.E.2d 956] (2011) ].... Another broad category of statutes is directed at 'punishing the defendant for conduct offensive to society, as distinct from punishing the defendant for the effect of that conduct on particular victims.' [Id.] at 287 [945 N.E.2d 956]." Traylor, 472 Mass. at 268-269, 34 N.E.3d 276. The court in Traylor cited "statutes criminalizing possession of child pornography" as an example of the latter category, that which is offensive to society as a whole. Id. at 269, 34 N.E.3d 276. See Rollins, 470 Mass. at 73, 18 N.E.3d 670. By contrast, we are persuaded that the act of posing a child for the production of child pornography is an example of the former category -- that which punishes behavior that victimizes a specific person. Compare Traylor, supra at 268, 34 N.E.3d 276 (statutes "focused upon the prevention of violence or physical injury to *639 others" [quotation omitted] ). Accordingly, it was not inappropriate to convict the defendant on the two indictments -- one under § 29A (a ), and one under § 29A (b ).
The defendant's citation to Dingle, supra, also fails to assist him. In Dingle, the defendant was charged with three counts of possession with intent to distribute child pornography in violation *619 of G. L. c. 272, § 29B, and with two counts of distributing child pornography, also in violation of § 29B. The indictments recited that the defendant had committed the offense "by either distributing ... or possessing with the intent to distribute 'visual material that contained a representation or reproduction of a posture or exhibition in a state of nudity or an act that depicts, describes, or represents sexual conduct' ... of a child under eighteen years of age." Dingle, 73 Mass. App. Ct. at 278, 898 N.E.2d 1. There, "[t]he defendant argue[d] that the indictments charge[d] two crimes in the alternative and thus [were] ambiguous, duplicative, and violate[d] art. 12 of the Massachusetts Declaration of Rights and the United States Constitution. His argument rest[ed] on his premise that, because paragraph (a ) of G. L. c. 272, § 29B, pertains to materials depicting children in a state of nudity, and paragraph (b ) pertains to materials depicting children engaged in sexual conduct, there are two separate crimes that must be charged separately." Dingle, 73 Mass. App. Ct. at 277-278, 898 N.E.2d 1. This court concluded, on the contrary, that "[t]he fact that the two paragraphs are identical except as to the content of the images demonstrates that the crime can be committed by two means, i.e., by distributing images of nudity or by distributing images of sexual conduct. The elements of the two paragraphs are the same; the crime can simply be carried out by two different means."[12] Id. at 279, 898 N.E.2d 1. Again, however, the crime of disseminating, or possessing with intent to disseminate a store of material is easily distinguished from the crime of producing the matter and, as part of that conduct, repeatedly subjecting a child victim to acts causing humiliation. Cf. Commonwealth v. Vega, 36 Mass. App. Ct. 635, 641, 634 N.E.2d 149 (1994) ("In Commonwealth v. Fitzpatrick, 14 Mass. App. Ct. 1001, 1003 [441 N.E.2d 559 (1982) ], we described a second penetration of a rape victim during the same episode as a separate crime. Surely the victim must so experience it ...").
2. Specific unanimity jury instruction. The defendant next argues that, because a number of photographs were admitted in evidence -- some depicting the victim, some depicting Mrs. Casbohm, and some depicting unidentified persons -- a specific unanimity instruction was required. He also maintains that because there were several images depicting a child posed in a state of nudity, and several others depicting a child engaging in a sexual *620 act, a specific unanimity instruction was required. He contends that "there is no way to determine upon which exhibit(s) the jury may have based its guilty verdicts." The defendant did not make this argument at trial. While counsel did argue for an instruction warning against a compromise verdict, she did not, either orally or in writing, mention specific unanimity, or object when the judge did not give a specific unanimity instruction. We therefore review to determine whether there was error and, if so, whether the error created a substantial risk of a miscarriage *640 of justice. Commonwealth v. Shea, 467 Mass. 788, 790-791, 7 N.E.3d 1028 (2014).
"An instruction on specific unanimity is warranted 'when, on a single charged offense, the prosecutor presents evidence of separate, discrete incidents, any one of which would suffice by itself to make out the crime charged. There, in order to find the defendant guilty of the charged offense, the jury must all agree as to at least one, specific incident.' Commonwealth v. Santos, 440 Mass. 281, 284-285 [797 N.E.2d 1191] (2003) [, overruled on other grounds, Commonwealth v. Anderson, 461 Mass. 616, 633, 963 N.E.2d 704 (2012) ]. See Commonwealth v. Accetta, 422 Mass. 642, 646 [664 N.E.2d 830] (1996) ('where there is evidence of separate incidents, each of which could warrant a guilty verdict, the jury must be instructed that specific unanimity is required at least as to one incident'). However, '[w]hen a single count is charged and where the spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a specific unanimity instruction is not required.' ... Santos, supra at 285 [797 N.E.2d 1191], quoting Commonwealth v. Thatch, 39 Mass. App. Ct. 904, 905 [653 N.E.2d 1121] (1995)." Shea, 467 Mass. at 798, 7 N.E.3d 1028.
Repeatedly, in cases involving sexual assaults on children, the cases have held that a specific unanimity instruction was not required, where a victim testified to repeated assaults over a period of time and was able to provide "reasonably detailed descriptions of various distinguishable forms of abuse," even though the victim "did not identify discrete instances when particular acts took place, much less supply a list of dates and times." Commonwealth v. Sanchez, 423 Mass. 591, 599-600, 670 N.E.2d 377 (1996), quoting Commonwealth v. Kirkpatrick, 423 Mass. 436, 443, 668 N.E.2d 790, cert. denied, 519 U.S. 1015, 117 S.Ct. 527, 136 L.Ed.2d 413 (1996). In Kirkpatrick, the court, citing with approval similar cases from California and Colorado, concluded that, "in a case of this kind, [where] the decisive issue at trial is the credibility of the [alleged victim], a jury will either believe that a consistent and repetitive pattern of abuse has *621 occurred, of necessity encompassing a number of discrete acts, or they will disbelieve it. Because, in a case of this kind, a jury are not offered a choice between discrete incidents of abuse to support a single charge, the risk of a lack of unanimity that we identified in [Commonwealth v.] Conefrey [420 Mass. 508, 514, 650 N.E.2d 1268 (1995),] does not exist." Kirkpatrick, supra at 442, 668 N.E.2d 790. For that reason, "the guarantee of due process does not require that the Commonwealth attempt the artificial task of identifying a specific instance of abuse as a basis for conviction." Id. at 444, 668 N.E.2d 790. See Santos, 440 Mass. at 285-286, 797 N.E.2d 1191 (" 'When a single count is charged and where the spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a specific unanimity instruction is not required.' ... Thatch, 39 Mass. App. Ct. [at] 905 [653 N.E.2d 1121]... [judge not required to give specific unanimity instruction where rape was alleged to have occurred as part of single episode, despite victim's testimony as to multiple acts of penetration]. The same is true if the prosecution presents evidence of a single criminal scheme or plan carried out consistently over time. In the absence of some distinguishing differences between the successive events, there is no reason to fear that the jury will pick and choose among the alleged incidents and convict the defendant while disagreeing as to *641 which of them were committed. See ... Sanchez, 423 Mass. [at] 599-600 [670 N.E.2d 377]... [where child victim described repeated identical pattern of sexual assaults, but did not describe particular incidents, specific unanimity instruction not required]").
It is clear in the case before us that this is such a case -- a criminal scheme was carried out consistently over a discrete period of time: that is, the defendant assaulted and photographed the victim each time she babysat for his children throughout the summer. There is no risk of jury confusion because the task for the jurors here was either to find the victim's testimony credible about the events of the summer or not. Further, each photograph admitted depicted the victim either nude, or engaging in sexual conduct, or both. Moreover, there clearly was evidence permitting the jury to determine which photos depicted Mrs. Casbohm and which depicted Tatiana -- through the testimony at trial, the jurors' personal observations of each person, and the photos.[13]
*622 3. Prosecutor's closing argument. Finally, the defendant argues that the prosecutor committed a number of errors during her closing argument. Specifically, he contends that the prosecutor appealed to the sympathies and "inflam[ed] the passions" of the jurors; that she vouched for the credibility of the alleged victim, using rhetorical questions and thereby shifting the burden of proof; and that she misstated the facts and the law.
"A prosecutor may argue 'forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence.' Commonwealth v. Kozec, 399 Mass. 514, 516 [505 N.E.2d 519] (1987). 'When a defendant raises a claim of error regarding a prosecutor's closing argument, we consider (1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions.' Commonwealth v. Kater, 432 Mass. 404, 422-423 [734 N.E.2d 1164] (2000), citing ... Kozec, supra at 518 [505 N.E.2d 519]. The first three factors actually become subsumed into the fourth. '[T]he entire record, including the balance of the prosecutor's argument, [is] relevant in determining whether the error was prejudicial to the point of requiring a reversal of the conviction.' ... Kozec, supra at 523 [505 N.E.2d 519]." Commonwealth v. Taylor, 455 Mass. 372, 383-384, 916 N.E.2d 1000 (2009).
We also note that only one of the errors that the defendant now argues drew an objection at trial. See Commonwealth v. Mazariego, 474 Mass. 42, 58, 47 N.E.3d 420 (2016) ("the absence of an objection ... from vigilant defense counsel is some indication that the comment did not land a foul blow that was unfairly prejudicial. See Commonwealth v. Toro, 395 Mass. 354, 360 [480 N.E.2d 19 (1985) ]").
With these principles in mind, we address the arguments in turn. The defendant's first argument, that the prosecutor's closing appealed to the sympathies of the jury, fails. "A prosecutor is 'permitted and expected to marshal the evidence and to argue for a decision of the controversy in favor of his client.'
*642 Commonwealth v. Johnson, 374 Mass. 453, 459 [373 N.E.2d 1121] (1978). The prosecutor suggested that the jury make a permissible inference that was based in the evidence. See ... Kater, 432 Mass. [at] 422 [734 N.E.2d 1164]." Commonwealth v. Ortiz, 463 Mass. 402, 419, 974 N.E.2d 1079 (2012). Here, the prosecutor's comments that the defendant "recognized ... an opportunity"
*623 and "snatched [it]" (and similar comments) are strongly worded but not unfair descriptions of the facts.
"Although some of the prosecutor's remarks here did appeal to the jurors' sympathy, we do not think they went beyond 'tolerable hyperbole.' " Commonwealth v. Pearce, 427 Mass. 642, 645-646, 695 N.E.2d 1059 (1998), quoting Commonwealth v. Hartford, 425 Mass. 378, 381, 681 N.E.2d 278 (1997). Compare Commonwealth v. Saunders, 75 Mass. App. Ct. 505, 511-512, 915 N.E.2d 229 (2009), where this court determined that the prosecutor's "characterization of the defendant as '[s]wooping down like a vulture' to take advantage of the young victim," though improper, was "not prejudicial."
Similarly, the prosecutor's repeated emphasis on the fact that the victim had just graduated from the eighth grade was based on the evidence admitted at trial; the prosecutor also referred repeatedly to the fact that the victim was fifteen years old at the time that the rape occurred -- an element the prosecutor was required to prove beyond a reasonable doubt. In addition, the victim was able to identify her body in one of the photographs by pointing out a necklace she had been given as a present when she graduated from the eighth grade, testimony that made her eighth grade graduation particularly relevant. We see no error.
Next, the defendant argues that the prosecutor improperly vouched for the credibility of the victim, when she asked the jury to consider whether the victim, as she testified, appeared to be capable of making up the story, and whether she looked like "she came before you in an effort to perpetuate a cold calculated fabrication? Or did she look like an eighteen-year-old junior in high school coming before a group of fourteen strangers and the man who raped her and his family and a judge and other strangers to talk about what happened to her after she graduated the eighth grade?" Again, the defendant did not object and, again, we see no error. This argument merely called upon the jurors to judge the victim's credibility based upon their observations of her testimony. In addition, it was a fair response to defense counsel's argument that "we know [the victim]'s motive to lie about this happening. She returned to the Casbohms' house in 2014 to do more babysitting. She didn't want to be there. It was another dreary summer of not getting paid for running after three kids."
The defendant's citation to Commonwealth v. Beaudry, 445 Mass. 577, 580-581, 839 N.E.2d 298 (2005), does not assist him, as the prosecutor in Beaudry" exceeded the scope of proper argument by referring to facts not supported by evidence and not within a juror's common *624 knowledge and suggesting an inference that could not reasonably be drawn from the evidence. The inference that the prosecutor suggested was that the [alleged victim's] testimony was true because 'it was not plausible that a child would possess knowledge of [the] sexual [acts alleged] unless she had acquired it from the acts with which the defendant was charged.' Commonwealth v. Scheffer, 43 Mass. App. Ct. 398, 401 [683 N.E.2d 1043] (1997). However, there was no factual basis in the trial from which to argue that the child demonstrated knowledge of sexual mechanics or terminology not ordinarily possessed by children of her age." Beaudry, supra. No such argument *643 was made in the case before us, and the prosecutor never expressed her personal opinion of the victim's credibility or implied that she had personal knowledge of facts not before the jury.
"Where credibility is at issue, it is certainly proper for counsel to argue from the evidence why a witness should be believed. ... [I]n context the prosecutor's comment here clearly constituted an invitation to the jury to think back to the witness's demeanor on the stand, along with a suggestion that her demeanor supported the credibility of her statements." Commonwealth v. Raposa, 440 Mass. 684, 694-695, 697, 801 N.E.2d 789 (2004). See Commonwealth v. Flint, 81 Mass. App. Ct. 794, 807, 968 N.E.2d 928 (2012) ("In the face of these direct assertions of evidence of improper motives underlying the victim's accusations, it was fair for the prosecutor to reply by asking the jury rhetorically, 'Why would a person make up something like this? What is the motive to fabricate? Are they being honest? Are they responsive to questions? Are they being direct? Do they appear to be forthcoming? Do they appear to be genuine? Do they sound as if they are giving contrived answers?' ... These questions were specifically tied to the evidence").
Defense counsel twice interrupted the prosecutor's argument to object that she was arguing facts not in evidence, once when she argued that one of the exhibits depicted the victim engaged in sexual conduct with the defendant. The judge overruled that first objection, saying that he "consider[ed] [the prosecutor's argument] to be a reasonable inference." Later, defense counsel objected to the prosecutor's argument that, contrary to defense counsel's argument, the victim had not complained about not being paid for babysitting and also that the victim had said that she did not want to engage in sexual conduct with the defendant. The trial judge, appropriately, refused "to single out any particular statement," but stated that he would emphasize in his instructions *625 that the jurors' "recollection trumps any representation made by counsel." In fact, the trial judge did give the instruction forcefully to the jury, before closing arguments and again in his final instructions to the jury, stating, "As I said just before the closing arguments and I will say again, if your memory of the testimony differs from a description of the evidence given by one of the attorneys, you are to follow your own collective recollection." Moreover, the prosecutor's statements, even if mistaken, did not go to the central issue of the case, which was whether the sexual conduct had occurred at all. No consent defense was available to the defendant, and the inferences to be drawn from the photographs clearly were for the jury. We see no error.
Finally, the defendant argues that the prosecutor misstated the law when she told the jurors that they could find the defendant guilty if they believed the victim, stating, "In this courtroom her testimony alone may be proof beyond a reasonable doubt." The defendant concedes that the victim's testimony was sufficient, by itself, to support the rape charge. However, he contends that the charges relating to production of child pornography required proof that "the photographs ... contained images of her and had been taken by [the defendant]." This argument ignores the fact that, as the Commonwealth argues, the victim did testify that the defendant posed and photographed her both nude and engaging in sexual conduct. We see no error.
For the foregoing reasons, the judgments *644 are affirmed.[14]
So ordered.

After the Commonwealth rested, the judge, with the Commonwealth's agreement, allowed a motion for a required finding of not guilty on indictments two through five, charging different forms of aggravated rape of a child.

The defendant was sentenced to a term of ten to twelve years in State prison on the aggravated rape of a child conviction and to concurrent ten-year probation terms to be served from and after the committed sentence on the convictions of posing a child in the nude and posing and photographing a child engaged in sexual conduct.

A pseudonym.

At the end of July, 2013, Tatiana turned sixteen years old.

At one point, when the Casbohms discovered that Tatiana had used all the minutes available on the prepaid cell phone for personal calls -- and then asked Mrs. Casbohm for money for feminine products, hoping to use the money to purchase more minutes -- they reported her to her mother. Tatiana's mother told her she would have to make up for it; Tatiana had already decided to give Mrs. Casbohm her own seventy-five dollar gift card, which she had received as a present.

Tatiana testified that the defendant later, on various occasions, placed his finger in her mouth and vagina, forced her to perform oral sex, and penetrated her anally. However, Tatiana could not remember if those things happened before her sixteenth birthday. For that reason, as noted supra, note 1, the judge, at the close of the Commonwealth's case, allowed, by agreement, the defendant's motion for a required finding of not guilty on indictments two through five.

Tatiana was able to identify a photograph of her breasts that was admitted in evidence because of her "eighth grade graduation necklace that [her] uncle had given [her]."

The number of images, including emoticons and Web site logos, totaled 22,715; 269 had been deleted.

General Laws c. 272, § 29A (a ), provides, in pertinent part:
"Whoever, either with knowledge that a person is a child under eighteen years of age or while in possession of such facts that he should have reason to know that such person is a child under eighteen years of age, and with lascivious intent, hires, coerces, solicits or entices, employs, procures, uses, causes, encourages, or knowingly permits such child to pose or be exhibited in a state of nudity, for the purpose of representation or reproduction in any visual material, shall be punished ..." (emphasis added).

General Laws c. 272, § 29A (b ), provides, in pertinent part:
"Whoever, either with knowledge that a person is a child under eighteen years of age or while in possession of such facts that he should have reason to know that such person is a child under eighteen years of age, hires, coerces, solicits or entices, employs, procures, uses, causes, encourages, or knowingly permits such child to participate or engage in any act that depicts, describes, or represents sexual conduct for the purpose of representation or reproduction in any visual material, or to engage in any live performance involving sexual conduct, shall be punished ... " (emphasis added).

General Laws c. 272, § 29C, provides, in pertinent part:
"Whoever knowingly purchases or possesses a ... photograph or other similar visual reproduction, or depiction by computer, of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such child is:
...
"(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child; with knowledge of the nature or content thereof shall be punished ..." (emphasis added).

Dingle also noted that (as in this case) the Commonwealth is not precluded from bringing separate indictments under the various subsections of the statute. 73 Mass. App. Ct. at 282 & n.9, 898 N.E.2d 1.

There are some physical differences between Tatiana and Mrs. Casbohm -- including skin tone and tan lines. In addition, although Tatiana could not identify her own vagina, Mrs. Casbohm told the jury which pictures were not of herself.

We have carefully considered each of the arguments in the defendant's brief. To the extent that any particular claim has not been addressed specifically herein, we have found it to be without merit. See Commonwealth v. Domanski, 332 Mass. 66, 78, 123 N.E.2d 368 (1954).