NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-782

COMMONWEALTH

vs.

BARRY FARRIS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted by a Superior Court jury on two indictments for rape of a child aggravated by age difference, G. L. c. 265, § 23A (a), and two indictments for indecent assault and battery on a child, G. L. c. 265, § 13B, the defendant appeals. He argues that a substantial risk of a miscarriage of justice arose from the prosecutor's closing argument, contending that the prosecutor impermissibly appealed to sympathy, misstated evidence, referred to facts not in evidence, and shifted the burden of proof to the defendant. We affirm.

Background. We summarize the facts the jury could have found based on the evidence at trial. When the victim was about eight years old, she, her siblings, and their mother moved into

an apartment that the victim's grandmother shared with her husband, the defendant. The victim slept on the living-room floor with her mother and siblings. The victim's aunt lived in an apartment on the same hallway, and often fed the victim and her siblings.

At that time, the victim loved her mother and wanted her affection. However, her mother was not around very much; she went out to "party" and left the victim and her siblings with the grandmother and the defendant. The victim did not have contact with her father or grandfather, and so the defendant was the only male she saw regularly. The defendant became "like [her] father." He took the victim places and helped her with homework.

While the victim was in the defendant's bedroom watching television, he would have her give him back rubs. The touchings progressed, and eventually the defendant raped the victim by penetrating her genital opening with his tongue and her vagina with his penis, and indecently touched her by putting his hand on her vaginal area and making her put her hand on his penis. The touchings continued almost every day for years.

On June 19, 2014, when the victim was nine years old, the aunt came to get her for dinner. The aunt opened the defendant's bedroom door and saw the victim adjusting her

clothes and the defendant adjusting his shorts. The aunt took the victim to her apartment, where the aunt spoke to the victim's mother. The victim was anxious and kept using the bathroom.

The aunt and the mother took the victim to a hospital where she underwent an examination by a sexual assault nurse examiner (SANE). At that point the victim had not had any sex education, and no one had told her about good or bad touching. She referred to her genitals as "my privacy" and to the defendant's genitals as his "boy thing." The victim had not yet had her first menstrual period, and so the SANE examined her genitals only externally, because internal examination would be painful. The victim's external genitals were within normal limits. A different SANE testified as an expert that sexual activity does not always leave scars or injuries; injuries are found in only about three to five percent of SANE examinations of children who report having been sexually assaulted, even though some cases without injuries involve video evidence of the child being penetrated.

Subsequent testing on a swab taken from the victim's lower abdomen was positive for semenogelin, a component of sperm, and amylase, a component of saliva. Semenogelin and saliva can be transferred only when wet. Testing revealed that the

defendant's DNA matched the DNA profile of the semenogelin and saliva.[1]

After the SANE examination, the victim's mother brought her back to the defendant's apartment. About a year later, the victim was placed in the custody of the Department of Children and Families. At first, she wanted to go back to the mother's custody, but then she "came to terms with how awful of a person [the mother] is." She and her siblings were adopted by other families. As of trial, the victim did not want to see or speak to her mother or grandmother.

The defense presented its case through cross-examination of the Commonwealth's witnesses and testimony of the defendant and his wife, the victim's grandmother. The defendant denied that he ever touched the victim inappropriately, but admitted that she sometimes gave him back rubs. In closing, defense counsel argued that the victim was not credible because of inconsistencies in her statements, the lack of evidence of injury, and the dearth of forensic evidence. From testimony that the victim and the defendant used the same towels, and from a DNA analyst's testimony about possible transfer, defense

---

[1] The expected frequency of occurrence of the DNA profile is approximately one in 1,335 males, thus excluding 99.92 percent of the male population.

4

counsel argued that the defendant's DNA on the victim's lower abdomen could have been transferred there from a towel.

The jury convicted the defendant of two indictments for rape of a child aggravated by age difference, by putting his tongue and his penis into the victim's genital opening, and two indictments for indecent assault and battery on a child, by putting his hand on the victim's vaginal area and by the victim putting her hand on his penis.[2]  The defendant appeals.

Discussion.  The defendant argues that in closing argument the prosecutor committed misconduct by appealing to jurors' sympathies, misstating evidence, referring to facts not in evidence, and shifting the burden of proof to the defendant. The defendant did not object to those comments at trial, and so we review the closing argument to "determine whether there was an error and, if so, whether the error created a substantial risk of a miscarriage of justice."  Commonwealth v. Kozubal, 488 Mass. 575, 590 (2021), cert. denied, 142 S. Ct. 2723 (2022).

1.  Appeal to sympathy.  The defendant argues that the prosecutor impermissibly appealed to sympathy by arguing that the victim was "easy prey" who was vulnerable because "the only

---

[2] The jury acquitted the defendant of two indictments charging rape of a child by force, G. L. c. 265, § 22A, and two charging indecent assault and battery on a child, G. L. c. 265, § 13B.

5

person that she really thought cared about her and loved her was the defendant," and his attention was "the only love she knew." Having carefully reviewed the prosecutor's closing argument, we conclude that her comments about the victim's vulnerability were "strongly worded but not unfair descriptions of the facts." Commonwealth v. Casbohm, 94 Mass. App. Ct. 613, 623 (2018). See Commonwealth v. Pontes, 402 Mass. 311, 316 (1988) (prosecutor's repeatedly referring to multiple rapes by two defendants as "degrading" was "fair characterization of the evidence," and jurors' resulting sympathy was "understandable but unavoidable"). The comment about the defendant's being "the only love [the victim] knew" was hyberbolic, but excusably so. See Commonwealth v. Huang, 489 Mass. 162, 181 (2022).

2. Misstating evidence. The defendant contends that the prosecutor misstated evidence when she asked the jury "doesn't it make sense" that no evidence of injury was found on the victim's external genitals because "if you do it over and over and over again, your body becomes accustomed to it. Like if you play the guitar and your fingers get red, but over time that stops happening." That argument was apparently an attempt at arguing the victim's credibility through commonsense logic. The problem was that the argument contradicted the testimony of the Commonwealth's expert SANE, who opined that the number of times

6

a patient has had sexual intercourse would not affect the likelihood of finding physical injuries.

We agree with the defendant that the prosecutor's analogy to a guitarist's fingertip callouses was not grounded in the evidence, but we conclude that it did not give rise to a substantial risk of a miscarriage of justice. The evidence was undisputed that the SANE examination showed that the victim's external genitals were "within normal limits." The victim's testimony did not give rise to any inference that the defendant caused any bruising or scarring: she testified that the defendant's touchings made her feel "[g]ood" and "[her] body liked it." For the prosecutor to contradict her own expert's testimony would not have helped the Commonwealth's case.

3. Facts not in evidence. The defendant contends that the prosecutor argued facts not in evidence when she asked the jury if it "ma[d]e sense" that "an eight or nine year old child who calls her body part a privacy and a bum, and doesn't even know what they're actually called, would know the intimate details of how intercourse occurs."

Again, the prosecutor's argument was apparently an attempt at arguing the victim's credibility through commonsense logic. The problem was that there was no evidence that a child's referring to body parts with childish words, as opposed to

7

clinical terms -- or, for that matter, obscenities -- would correlate with knowledge of specific sex acts.  See Commonwealth v. Beaudry, 445 Mass. 577, 581 (2005) (record did not show that assumption that young children are unaware of sexual acts and terminology "remains valid today").  Even so, we conclude that the argument did not give rise to a substantial risk of a miscarriage of justice.  The victim's detailed testimony about the sexual assaults was corroborated by her aunt's discovery of the victim and the defendant in the bedroom and the evidence of the defendant's DNA in sperm and saliva on her lower abdomen.

The defendant contends that the argument did cause substantial risk of a miscarriage of justice because the prosecutor knew "that there were likely alternative reasons for [the victim] to have that knowledge," including her having watched pornography and had sexual contact with another male relative.  From the record before us, we cannot conclude that there was any such evidence.  Relying on cases including Commonwealth v. Michalski, 95 Mass. App. Ct. 520, 524 & n.2 (2019), the Commonwealth moved in limine to preclude the defense from introducing evidence that the defendant told police that he had seen the victim watching pornography, and that she probably was molested by another male staying in the apartment.  The judge ruled, "I will wait [until] the issue comes up during

trial.  If it does, and . . . there's an objection, I will rule on it in context."  During trial, defense counsel asked the victim on cross-examination if she knew several other males, by name, saying that each of them had lived in the apartment or spent time there; the victim replied that she did not remember those males.  The defendant never sought to introduce evidence that the victim had watched pornography or been molested by another male.  We cannot conclude from this record that there was any such evidence.

4.  Burden shifting.[3]  Finally, the defendant argues that the prosecutor shifted the burden of proof by asking the jury, "What benefit did [the victim] have from saying what the defendant did to her for years?"  The prosecutor asked that question immediately after arguing that the victim did not have a motive to lie because her disclosure of sexual abuse resulted in her being taken away from her family, which she did not want.

"Contrary to the defendant's broadest contention, there is no categorical prohibition against suggestion by a prosecutor

_____

[3] Although the defendant contends that he objected to the prosecutor's closing argument on grounds that it shifted the burden, he did so only as to the prosecution's suggestion that he had an obligation to speak to the police -- an argument he does not pursue on appeal.  Consequently, we review the defendant's burden-shifting argument for a substantial risk of a miscarriage of justice.  See Kozubal, 488 Mass. at 590.

that a prosecution witness has no motive to lie." Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008). The prosecutor's argument came in response to defense counsel's argument that the victim "had a tumultuous childhood" and during "a very difficult time for her" she "tended to make things up." Thus, the prosecutor's rejection of the victim's alleged motive to lie was grounded in the evidence. Id. at 180. We similarly conclude that the prosecutor permissibly argued from the evidence that the defendant had the opportunity to sexually assault the victim, the grandmother was not credible when she testified that the victim was in bed with the defendant because the victim had migraines, and the jury should use their common sense in assessing the defense theory that the victim wiped the defendant's bodily fluids on her abdomen with a towel. There was no burden shifting.

Judgments affirmed.

By the Court (Singh, Grant & Tan, JJ.[4]),

Paul Little

Clerk

Entered: February 20, 2026.

---

[4] The panelists are listed in order of seniority.